STATE OF MISSISSIPPI *v.* BOARD OF LEVEE COMMISSIONERS.

TAXATION. *Public property. Exemption. Penitentiary farm products.*

Public property is exempt from taxation. Cotton produced by convicts, under the control and management of the state, upon the penitentiary farms in a levee district, is not subject to the cotton tax or other levee taxes.

FROM the circuit court of Washington county.

HON. F. A. MONTGOMERY, Judge.

The facts are thus stated by the attorneys for the state, in the abstract of the record filed by them, and its correctness was conceded by the attorney for the appellee:

The State of Mississippi raised, with its convicts, cotton in the Mississippi levee district, in the year 1895. The state undertook to ship this cotton to a market outside of the district. Under the law a tax of one dollar a bale is levied on each bale of cotton grown within said levee district, and it is a criminal offense to transport any cotton from the district until the cot-

ton tax is paid.    The state, in order to transport its cotton, was forced to pay this tax.    The payment was made under protest, and under an agreement that such payment was not to affect the state's right to recover back this tax.    This tax, so paid, was deposited in bank, to abide the decision of the suit between the state and the levee board, as to whether the state was liable for such tax.    Suit was instituted by the state.    The levee board pleaded to the declaration, admitting the payment of the tax, but claimed that the tax was due by the state, and should have been paid.    On the trial it was admitted that there was a large number of levee bonds issued subsequent to the year 1880 outstanding, and that the cotton tax was looked to by the board and its bondholders as the main fund with which to pay these bonds.    It was further admitted that the cotton taxed, at the time of its taxation, belonged to the State of Mississippi, and that the only point for the court to decide was, whether such cotton was liable to taxation by the levee board.    The court below gave judgment for the levee board, and the state appealed.

*Jayne & Watson,* for appellant.

At the time of the issuance of all the outstanding bonds of the levee board the law expressly excepted all state property from taxation.    Code of 1857, § 3, art. 2, p. 73; code of 1871, § 1662; code of 1880, § 468; code of 1892, § 3744.    So that when the bonds were accepted by the bondholders they took them with the express declaration of the state that all of her property, real and personal, should be exempt from taxation.    But if there had been no express declaration of exemption by the state, still the state's property would have been exempt, because unless expressly authorized to be taxed, the property belonging to the state or sovereign would, by the rules of construction, be exempt from taxation.    Cooley on Taxation, 172; 1 Desty on Taxation, ch. 3, pp. 34–45.

If the tax claimed be a local assessment, there is no more warrant for making the state respond to a local assessment than

there is to a tax.    1 Desty on Taxation, p. 34, and authorities
there cited.

*Wiley N. Nash,* attorney-general, on same side.

The moment the title to property becomes vested, either in a
state or the United States, the property is no longer subject to
taxation.    The penitentiary of this state is one of the instru-
mentalities of our state government.    Under our system, it is
one of the necessary means employed in the exercise of her sov-
ereign power.    Neither the penitentiary nor anything that
grows out of it, as incidental to its conduct, management or
control, can be taxed or assessed.

*Walter Sillers,* for appellee.

While it is true that the property of the state is usually ex-
empt from taxation, and there is a special statute exempting all
property of the state, both real and personal, from taxation,
this rule and this statute apply to general taxation for county
and state purposes.    It does not apply to local taxation of this
kind, usually called "local assessments."    Cooley on Taxation
(2d ed.), p. 606 and notes thereto.

The statute provides that all the agricultural products raised
in this state shall be exempt from taxation, yet no one would
contend that this exempts cotton raised in this district from the
tax levied thereon.    That the cotton tax and other levee taxes
are assessments for local improvement, and do not come under
the general rule of taxation, is shown by several decisions of
this state and by the decision in the case of *Ford* v. *Delta &
Pine Land Co.,* delivered by the supreme court of the United
States at its October term, 1896.    The court, in that case, in
discussing the question of exemption claimed, says: "But,
further and chiefly, the only exemption was from taxation, and
it is a general rule that a clause exempting from taxation does
not release the property so exempted from liability from assess-
ments for local improvements.    *Sheehan* v. *Hospital,* 50 Mo.,

155; *Cemetery* v. *Buffalo*, 46 N. Y., 596; *Patterson* v. *Society*, 24 N. J. Law, 385; *State* v. *Newark*, 35 N. J. Law, 157. This question was considered in this court in *R. R. Co.* v. *Decatur*, 147 U. S., 190.    The exemption in that case was from all taxes under the laws of this state " (Ill.), and it was held that that clause did not relieve the property from the burden of special assessments imposed to pay the costs of local improvements.    The question was discussed at some length, and the various authorities reviewed in the opinion then delivered.    That is also the settled law of the State of Mississippi.    *Daily* v. *Swope*, 47 Miss., 367; *Vassar* v. *George*, *Ib.*, 713; *Macon* v. *Patty*, 57 Miss., 378.

Argued orally by *J. M'Jayne* and *Wiley N. Nash*, attorney-general, for appellant, and by *Walter Sillers* for appellee.

Woods, C. J., delivered the opinion of the court.

On general principles, and by wellnigh universal opinions of courts of last resort, public property is exempt from taxation, and this independently of any positive law, constitutional or statutory.    The burdens of taxation are laid upon citizens and the property of citizens, in order to raise necessary revenues for the administration of government in all the departments of the state.    The state legislates for the purpose of raising revenues from the citizens, and not for the purpose of raising them from itself.    Its property is used for the proper discharge of governmental functions.    It has no income save such as is derived from taxation of its citizens and their private property, and this income never exceeds, and should never exceed, the mere amount absolutely necessary for the exercise of these functions, and especially does not the state tax its own property employed in or used for governmental purposes.

These general propositions will hardly be refused assent by anyone.    It is thought by counsel for the appellee, however, that the exemption of the 1,660 bales of cotton raised by the

convicts of the state from levee taxes would be an impairment of the contract, to that extent, of the levee board and the holders of the levee bonds, that contract stipulating for certain taxes on not only the lands in the levee district, but also on all cotton raised in that district for the payment of the interest annually accruing on the bonds, and for the final liquidation of the bonds themselves. But this contention is unsound. When the contract in question was made by the state's authority, the exemption of the public property of the state from taxation was settled law, universally recognized. Beside, however, when this contract was made, the positive statutory law of the state expressly exempted from all taxation all property, real and personal, belonging to the state, and the contract, which it is thought will be impaired by an exemption of the 1,660 bales of cotton, must be now considered and read as having incorporated in it this statute of exemption of the state's property. The bondholders accepted a contract, it is true, which stipulated for taxation on all lands in the levee district, and for taxation of all cotton raised in that district, but the contract was accepted by all parties with full knowledge that all property of the state, real and personal, was not subject to taxation for any purpose. The contract must be read, then, as if it expressly stipulated for taxation of all property, except the state's property, real and personal.

But, it may be said, that when the state enters upon the business of cotton planting, its property employed in or created by and resulting from such mere business employment, is, as to these bondholders and the levee board, then to be regarded and treated as all other cotton raised by planters in pursuit of their vocation. The plain answer to this is that the state, in discharge of its governmental duties of looking after, caring for and suitably employing its penitentiary convicts, has wisely deemed it best to distribute its convicts and establish penitentiary farms in several localities in the state. These farms are parts of the state's penitentiary system of employing its con-

victs and caring for them.    They are, in fact, local and movable penitentiaries, under the sole management and control of the state authority, and the products of these farms, thus established to promote the welfare of the convicts and to provide them with labor to which they are adapted, and for which their previous training and habits of life peculiarly fit them, are parts and parcels of the property of the state, just as shoes, wagons and furniture made by convicts are.    The prime object of the state in maintaining a penitentiary, under whatever system adopted, is to properly guard and care for the convicts, and to lessen the public burden of feeding, clothing, sheltering and properly caring for them.    The raising of cotton, the making of shoes, the making of furniture, are merely incidents to the discharge of the function of government in maintaining and managing its penitentiary.

We have found no authority, nor has any been cited by counsel for appellee, holding that public property employed as or kept and used for governmental purposes, was ever thought to be a proper subject of taxation by the state for any purpose. Call these particular taxes local assessments, if you will, still they are taxes, and what has been said by us applies to them as well as to all other taxes sought to be imposed upon the property of the sovereign.

*The judgment of the court below is reversed, and judgment for the state will be entered here.*