BOYD v. COLEMAN, SHERIFF AND TAX COLLECTOR.*·

(Division A.   March 7, 1927.)

[111 So. 600.   No. 26405.]

1. LICENSES. *Legislature held not to have intended automobile owners to assume risk of arrest for failure to comply with registration laws when impossible (Laws 1924, chapter 116, sections 2, 4, 5, 10, 11, as amended by Laws 1926, chapter 120, sections 1-5, respectively).*

   Intention of legislature, under Laws 1924, chapter 116, sections 2, 4, 5, 10, 11, as amended by Laws 1926, chapter 120, sections 1-5, respectively, relative to registration tax on automobiles, *held* not to require automobile owners to assume risk of possible arrest and punishment for violation of act as required by section 5, when conditions arose out of practical operation of law which rendered it impossible for owners of vehicles to comply with provisions thereof.

2. STATUTES. *Statutes should not be construed to require performance of duties rendered impossible of performance.*

   The law does not require doing of an impossible thing, and statutes should not be construed to require performance of duties which are rendered impossible of performance by reason of causes for which person is in no way responsible and powerless to change or remove.

(449)

3. LICENSES. *Penalty for noncompliance with automobile registration laws cannot be enforced when state was unable to furnish license tag and certificate* (*Laws* 1924, *chapter* 116, *sections* 2, 4, 5, 10, 11, *as amended by Laws* 1926, *chapter* 120, *sections* 1-5, *respectively*).

Where state agents were unable to furnish license tag and certificate of ownership on payment of fee prescribed by Laws 1924, chapter 116, sections 2, 4, 5, 10, 11, as amended by Laws 1926, chapter 120, sections 1-5, respectively, penalty of one hundred per cent prescribed by the act for failure to promptly comply with provisions, cannot be enforced.

---

\*Corpus Juris-Cyc References: *Impossibilia nulla obligatio est*, 31CJ, p. 258, n. 46; Motor Vehicles, 28Cyc, p. 33, n. 77 New; Pleading, 31Cyc, p. 333, n. 76; Statutes, 36Cyc, p. 1107, n. 36; p. 1108, n. 46; p. 1109, n. 47, 48, 53. As to validity of license tax upon motor vehicles, see annotation in 1 L. R. A. (N. S.) 215; 21 L. R. A. (N. S.) 41; 37 L. R. A. (N. S) 440; 52 L. R. A. (N. S.) 949; L. R. A. 1915D, 322; 2 R. C. L. 1176; 1 R. C. L. Supp. 715; 5 R. C. L. Supp. 129.

APPEAL from circuit court of Alcorn county.

HON. C. P. LONG, Judge.

Application for mandamus by W. E. Boyd against J. B. Coleman, sheriff and tax collector, to require collection of penalty from petitioner for failure to pay fees and procure license tag and certificate of ownership for automobile. Judgment of dismissal, and petitioner appeals. Affirmed.

*B. F. Worsham,* for appellant.

This suit involves the construction and application of chapter 120, Laws of 1926, which is the new automobile license tag and certificate law. The appellant did not pay the privilege and procure the license tag and certificate before the first day of January, 1927, the sheriff claiming that he did not have the tags and certificates to give to the taxpayer until about January 6, 1927, and that he did not then have more than enough tags and certificates to furnish to about half the automobile owners in the county.

The appellant contends that it was the duty of the sheriff to collect, not only from him, but from all automobile owners within his county, the penalty of one hundred per cent, the appellant being interested in this position not only because of the fact that he was anxious to pay the full amount due by him, but also in order that the county and state might be able to collect from all automobile owners in the county and state the amount due by them. Section 4, chapter 120.

The appellant is not only interested in paying whatever amount he is lawfully required to pay under the laws of the land, but under his construction of the law he is subject to the payment of the fine as provided by section 18 whenever he fails or refuses to comply with the requirements of the statute.

We know of no precedent that we might cite which would be of any benefit to the court in determining this issue, but we are content in relying upon the act itself, and its provisions as to the collections of the penalty provided.

*Rush H. Knox,* Attorney-General, for appellee.

The question is whether or not a taxpayer of Mississippi shall be called upon to perform an impossible thing, and in his failure so to do will be penalized civilly and criminally by the operation of a statute such as the one under review before this court. *State* v. *Gish,* 168 Iowa, 70 Ann. Cas. 1917B 135. See, also, *First Nat'l Bank of Belle Plain* v. *McConnell,* 103 Minn. 340, 14 Am. & Eng. Cas. 396; *Litchfield* v. *County of Webster,* 25 L. Ed. 925.

Argued orally by *Rush H. Knox,* Attorney-General, for the state.

Cook, J., delivered the opinion of the court.

The appellant, W. E. Boyd, filed a petition in the circuit court of Alcorn county, Miss., alleging substan-

tially the following facts: That the petitioner is a resident citizen and taxpayer of said county and state, while the defendant, J. B. Coleman, is the duly elected, qualified, and acting sheriff and tax collector of said county; that petitioner is the owner of a Chevrolet automobile; that by chapter 120, Laws of 1926, it is provided that during the month of December, 1926, the license fees or taxes and registration fees therein provided should be paid in the county where the automobile owner resides; that it is also provided in said act that, if the taxes and fees therein provided for are not paid during the month within which liability therefor accrued, an additional amount of one hundred per cent. of the said taxes and fees should be paid as damages or penalty; and that the tax collector is authorized and required to seize and sell any personal property of any person liable for this tax or penalty in the same manner that he is required by law to seize and sell such property for other delinquent taxes.

The petition further alleged that petitioner did not pay this registration and license fee during the month of December, 1926, but that on the 21st day of January, 1927, he applied to the sheriff and tax collector for the proper license tag and certificate of ownership; that the sheriff and tax collector demanded of him the regular cost or price of said license tag and certificate of ownership, and failed and refused to demand anything of him, as required by law, by way of a penalty for the failure and refusal of petitioner to procure his license for the year 1927 in the month of December, 1926; that it was the duty of said sheriff and tax collector to collect from petitioner, not only the regular fees or taxes prescribed by law for the year 1927, but it was his duty to also collect a corresponding amount as a penalty for his failure and refusal to pay said fees and procure the proper license tag and certificate of ownership during the month of December, 1926, as provided by law.

Petitioner alleged that he is a citizen of the state of Mississippi, and, as such, vitally interested in the enforcement of the laws of the state, and particularly in the laws having to do with the public revenue thereof; that he was advised that the sheriff and tax collector was failing and refusing to collect said penalty from any automobile owners, although all of said automobile owners had incurred the penalty; that the said sheriff and tax collector claimed that no penalty had accrued to the state, and consequently, as a result of this action of the sheriff and tax collector, the state was being deprived of a large amount of revenue rightfully belonging to it.

Petitioner further alleged that, when he tendered to the sheriff and tax collector the license and registration fees, as fixed by law, he also tendered a corresponding amount as the penalty of one hundred per cent. provided by law for his failure to pay such fees or taxes during the month of December, 1926, but that the said sheriff and tax collector failed and refused to accept the said penalty, claiming that no penalty had accrued to the state on account of the petitioner's failure to pay said fees or taxes in the month of December, 1926, as required by law.

The petitioner further alleged that, by reason of the said conduct of the sheriff and tax collector, the state of Mississippi was losing, and would continue to lose, a large sum of money that rightfully belonged to it; that, unless the petitioner procures said license tags and certificate of ownership, as provided in said act, and displays the same on his car, as required by said act, paying therefor the proper privilege and penalty, he may be subjected to arrest and punishment therefor, and be held liable for the fine provided in such cases.

The prayer of the petition was for the issuance of a writ of mandamus directing and commanding the said sheriff and tax collector to collect from the petitioner the penalty provided by the act for his failure to pay the fees and procure the proper license tag and certificate of

ownership during the month of December, 1926, in addition to the regular fees and taxes prescribed by the Act of 1926.

To this petition, the defendant interposed the following plea:

"Comes now J. B. Coleman, the regularly elected, qualified, and acting sheriff and tax collector in and for Alcorn county, of the state of Mississippi, who is the defendant in this suit, and for plea in this behalf, says and admits that he is and was on January 21, 1927, and for about three years prior thereto, the said sheriff and tax collector of said county and state aforesaid, and that, by virtue of his office, it is and has been his duty under the law to collect a road and bridge privilege license due by the owners of motor vehicles in Alcorn county, Miss., and by virtue of the terms of chapter 120, Laws of 1926, and more especially by section 2 of said act it is the duty of the said sheriff and tax collector, during the month of December of each year, to collect from all owners of motor vehicles the tax prescribed by said chapter; said section providing, among other things, that any person becoming liable for such tax after the 1st day of January of the year shall pay the proportionate part of such tax for the remainder of the year, and, if the foregoing taxes are not paid during the month in which such liability shall have accrued, one hundred per cent. damages shall be paid, and said section further provides that all of the taxes prescribed by said chapter shall be paid during the month of December of each year, and, by virtue thereof, the road and bridge privilege license to be paid for the operation of motor vehicles during the year 1927 became due and payable during the month of·December, 1926.

"Respondent for further plea says that all during the month of December he was in the office of the sheriff of Alcorn county, and was fully supplied with deputies and assistants to discharge all of the duties of said office, and that it was the duty of the state auditor to furnish

to your respondent a sufficient number of automobile tags, privilege licenses, and registration containers, such as is provided for in said chapter, and that it was the duty of said auditor to furnish said tags, licenses, and containers prior to December 1, 1926, but for some reason unknown to respondent, the said auditor wholly failed to supply respondent with the necessary tags, privilege licenses, and containers, etc., but is informed and so charges that it was impossible for said auditor to procure said tags from the manufacturer, at any time during the month of December, and that said tags, licenses, and container were not delivered to your respondent until on or about the 6th day of January, 1927, at which time he received approximately one thousand two hundred in number, whereas he should have been furnished with approximately two thousand five hundred, there being approximately two thousand five hundred automobiles in Alcorn county for which tags, licenses, and containers are required for the year 1927; that the failure to procure said licenses, tags, and containers was through no fault, negligence, or delay on the part of your respondent, and your respondent made frequent demands on the state auditor for a sufficient supply of said licenses, tags, and containers to equip the automobiles of Alcorn county, but said auditor was unable, because of the failure, as respondent is informed, on the part of the contractors, to supply said state auditor.

"Respondent would further respectfully show that, if said tags, licenses, and containers had been delivered to him by the state auditor on or before December 1, 1926, or even prior to December 15, 1926, he could and would have supplied all automobile owners in Alcorn county with the necessary tags, licenses, and containers, and collected therefor the amounts prescribed by said chapter 120, Laws of 1926, but because of the failure of the state auditor to supply said tags, licenses, and containers during the month of December, he was unable to sell and deliver to plaintiff and other motor vehicle owners tags,

licenses, and containers, although frequent demands were made upon him by the automobile owners of Alcorn county for said licenses, tags, and containers, including the petitioner herein. That, on January 1st, under the terms of section 2 of chapter 120, Laws of 1926, it is provided that if the taxes are not paid during the month within which such liability shall have accrued, one hundred per cent. damages shall be paid, but that prior to the delivery to your respondent of any tags, licenses, and containers, the time for procuring said licenses without penalty had elapsed, and that when said licenses were received your respondent delivered to all who applied therefor, tags, licenses, and containers without exacting from any of said motor vehicle owners the one hundred per cent. damages, and now declines to collect said penalty, because he is informed and believes that it was impossible for the motor vehicle owners of Alcorn county to procure the licenses, tags, and containers during the month of December, 1926, and prior to the accruing of the liability of one hundred per cent. damages, and that this failure on the part of the automobile owners was through no fault or neglect of the various owners, and, being informed and advised that the law does not require the impossible of anyone, and it having been impossible for the owners to comply with said law, your respondent is informed and believes that those owners who applied for licenses, tags, and containers during the month of January when same were available, and tendered the amount prescribed by law, such automobile owners are not liable for one hundred per cent. penalty, and, relying upon this belief, your respondent has delivered to many hundred automobile owners of Alcorn county tags, licenses, and containers without exacting the one hundred per cent. penalty, and he is informed and believes that, under the law and the facts existing in this case, he is not entitled to collect said penalty until commanded by the law so to do, and that he is not willing to become custodian of the funds which may or would

accrue in his hands by the collection of said penalty, and, being unwilling to collect funds to which he is not entitled by law, as he is informed and believes, he has declined and now declines to collect the said penalty until required by law so to do; that, even though petitioner had paid said licenses in the month of December, as required by the act, yet he could not have delivered the license and certificate, and petitioner could therefore not have displayed the tag and certificate, as is also provided therein.

"Respondent respectfully shows to the court that he is willing and anxious to comply with the law and has been at all times, and that, if this honorable court shall decide that it is the duty of your respondent to collect said penalty, he is willing to receive all penalties tendered to him and obey the law in every respect, but he is unwilling to do so until commanded so to do by this honorable court. Wherefore the defendant prays the judgment of this court if he shall make any further answer hereto. And all of which the defendant says that he is ready to verify."

To this plea the petitioner filed a demurrer, which was overruled, and the petitioner thereupon declining to plead further, a final judgment was entered dismissing the petition, and from this judgment this appeal was prosecuted.

The provisions of chapter 120, Laws of 1926, which are material to a decision of the question here presented, are the following:

Section 2 of chapter 116, Laws 1924, as amended by section 1, chapter 120, Laws of 1926, levies a privilege tax, and fixes the amount thereof, on all classes and kinds of motor vehicles.

Section 4, chapter 116, Laws 1924, as amended by section 2, chapter 120, Laws of 1926, provides, in part, as follows:

"Sec. 4. During the month of December of each year, the foregoing tax fee shall be paid in the county where

owner resides or in the county where the car is used, for the following calendar year, and any person becoming liable for such tax after the first day of January of any year, shall pay the proportionate part of such tax for the remainder of the calendar year, beginning with the first day of the month within which such liability shall have accrued; and such proportionate part shall be computed by the number of months within the remainder of the year; each month being considered as one-twelfth of the year; and, if the foregoing taxes are not paid during the month within which such liability shall have accrued, one hundred percent. damages shall be paid; and the tax collector shall seize and sell any personal property of any person liable for the foregoing tax or penalty therefor, in the same manner that he is required by law to seize and sell such property for other delinquent taxes. The payment of this tax in one county shall be good for the entire state until the first day of January, of the year next succeeding the year for which such privilege tax is paid.''

Section 5, chapter 116, Laws of 1924, as amended by section 3, chapter 120, Laws of 1926, provides as follows:

''Sec. 5. Every owner of a motor vehicle, other than a motorcycle, shall, during the month of December, 1926, secure from the tax collector of the county of his or her residence a certificate of ownership showing the following: (1) The name of the owner; (2) his post office and voting precinct; (3) his county; (4) kind of vehicle; (5) the make or name of the manufacturer; (6) type (whether touring car, sedan, coupé, etc.); (7) the model and year; (8) by what power propelled; (9) the maximum capacity in pounds if a commercial motor vehicle, or the weight and maximum capacity in horse power (A. L. A. M.) as herein provided; (10) the factory number; (11) the date of delivery of the vehicle to the owner; (12) license number for the calendar year; (13) the date of issuance of the certificate of ownership and such other data as the auditor of public accounts may deem neces-

sary. Such certificate of ownership shall be filled out in triplicate, by, or in the presence of, the tax collector or his deputy, and signed on the reverse side with the signature of the owner; and after the tax collector shall have written in ink upon such certificate, the number corresponding to the license number on the tag and on the container herein provided for, the tax collector shall sign and certify to said certificate and shall then place the original certificate of ownership within the container provided for herein, in such fashion that said certificate of ownership may be removed from such container only by the mutilation of such certificate and without injuring or destroying such container; and the tax collector shall deliver to the owner the container with such original certificate of ownership previously inserted therein, together with the license tag for the calendar year, bearing the corresponding number; and the owner shall attach the container to the instrument board, of the vehicle at the same time that the corresponding license tag for the calendar year is attached to said vehicle; and it shall be unlawful to operate any vehicle over the roads of the state of Mississippi without such tag, certificate of ownership, and container bearing the same license number. And the tax collector shall deliver the duplicate certificate of ownership to the owner to be kept by said owner and shall forward the triplicate to the auditor of public accounts of the state of Mississippi as provided for herein. . . .

"The certificate of ownership shall be displayed in a proper holder or container that will protect the same and from which holder or container the said original certificate of ownership may be removed only by mutilating or destroying the aforesaid certificate and without injuring or destroying such container and said certificate of ownership shall not be used after such mutilation. The certificate of ownership shall be subject to inspection by any peace officer at any time. The container complying with the provisions of this act shall,

after bids have been solicited, be selected by the state auditor of public accounts and shall be of a substantial character, and shall be equivalent to the requirements of this act, in the opinion of the state auditor; the cost to the state of such container and the printed forms of the certificate of ownership in triplicate, together with transportation charges thereon, shall not exceed thirty-five cents, for each container and printed forms.''

Section 105, chapter 116, Laws of 1924, as amended by section 4, Laws of 1926, reads as follows:

''Sec. 10. The auditor of public accounts shall furnish the tax collector with a sufficient supply of tags, certificates of ownership and certificate containers, for the vehicles covered by this act from time to time as needed. The tag for the electric motor vehicles, the commercial motor vehicles and the motor vehicles shall be fifteen inches wide and six inches high, made of metal or other proper material. Such tags, or number plates, shall be of distinctly different colors, each year, and there shall be at all times a marked contrast between the color of the number plates and that of the numerals or letters thereon. The certificates and certificate containers shall be of such character as to conform to the requirements of section 5. . . .

''The number of the tag shall be written across the face of it, and the number of the tag shall represent the registration number; and the abbreviation 'Miss.' and the year for which such tag is issued shall be written horizontally below the number on the tag. One tag shall be furnished such owners and shall be fastened immovably eighteen inches or more above the ground, at the rear of the vehicle under the rear light, with the number in an upright position so that it will be plainly visible and legible at all times and at night a distance of sixty feet.''

Section 11, c. 116, Laws of 1924, as amended by section 5, Laws of 1926, provides, in part, as follows:

''Sec. 11. Upon the filing of the certificate of ownership required by this act and the performance of the

other requirements provided for in this act and the payment of an annual registration fee of one dollar and fifty cents, the tax collector shall deliver in numerical order one license tag to the registered owner of the motor vehicle, and one container of corresponding number, containing the original certificate of ownership filled out, signed and certified to according to the provisions of this act. The tax collector shall keep a register in a well-bound book which shall show in an appropriate column the facts contained in such certificate of ownership. The registration shall be made in numerical order and a new registration must be had each year. And the license and registration fee for any year shall be paid annually during the month of December. At the end of each month, or within twenty days thereafter the tax collector shall transmit to the auditor of public accounts the triplicate copies of certificates of ownership, filled out as provided by this act and shall at or within the same time pay over to the auditor of public accounts all registration fees collected of the owners or transferees or other persons as provided by this act."

There are many other sections and provisions of this act, which deal with the licensing of dealers in automobiles, the sale and transfer of automobiles, records to be kept by the officers, commissions of officers, and disbursements of funds derived from the licensing of automobiles, etc., which are not material to a decision of the question now presented.

From a reading of the foregoing provisions of chapter 120, Laws of 1926, it will be noted that it is made the duty of the auditor of public accounts to furnish to the various tax collectors of the state, on or before the 1st day of December of each year, a sufficient supply of license tags, certificates of ownership, and containers for these certificates, and, upon the payment during the month of December, of the fees or taxes prescribed by the act, the tax collector is required to deliver to the automobile owner a license tag containing a serial num-

ber, and a certificate of ownership containing a corresponding number, and securely inclosed in a container provided for that purpose. The owner is then required to attach this license tag and certificate of ownership to his automobile, and it is made a violation of law punishable by fine and imprisonment to operate any motor vehicle on the roads of the state without such tag, certificate of ownership, and container bearing the same license number being attached thereto. It is also made the duty of the tax collector to transmit to the auditor of public accounts, within twenty days after the end of each month, copies of all certificates of ownership issued during the previous month, and at or within the same time to pay over to the auditor of public accounts all registration fees collected from owners, or transferees, or other persons, as provided by the act.

Considering all the provisions of this act together, it is manifest that the purpose thereof is to regulate the use of motor vehicles on the streets and highways, and to afford better protection against theft of such vehicles, and, as a means of such regulation, there is imposed upon the owner certain duties which must be performed by him, as a condition precedent to the use of the vehicle. He must pay, before the 1st day of January of each year, all the license and registration fees required of him by this act, and secure a certificate of ownership, setting forth on the face thereof the information specifically required by the act, and such other data as the auditor of public accounts may deem necessary, which certificate shall be inclosed and sealed in a container to be furnished him by the tax collector. He must also secure a license tag and this tag and certificate of ownership must be attached to the vehicle in the manner thereby provided before the vehicle may be used upon the streets and highways of the state. Under a literal and strict construction and application of these provisions of the act, if a condition should arise making it impossible for the tax collector to furnish, and the owners to secure,

these tags and certificates, although the failure to secure them was due to no fault of the owners or tax collectors the use of any motor vehicle in the state would be absolutely prohibited. Such a construction would require hundreds of thousands of vehicles to stand unused so long as this condition continued, unless the owners thereof assume the risk of probable arrests and punishment for violations of the provisions of the act. We do not think the legislature intended that such a result should follow, when conditions arise naturally out of the practical operation of the law which render it impossible for the owners of such vehicles to comply with the provisions thereof. The law does not require the doing of an impossible thing, and a statute should not be construed to require of a person the performance of duties which are rendered impossible of performance by reason of causes for which he is in no way responsible, and which he is powerless to change or remove. In the case of *U. S.* v. *Kirby,* 7 Wall, 482, 19 L. Ed. 278, the supreme court of the United States said:

"All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language, which would avoid results of this character. The reason of the law in such cases should prevail over its letter."

In the case of *Holy Trinity Church* v. *United States,* 143 U. S. 457, 12 S. Ct. 511, 36 L. Ed. 226, the same rule is expressed in the following language:

"It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers. . . . This is not a substitution of the will of the judge for that of the legislator, for frequently words of general meaning are used in a statute, words broad enough to inclose the act in question, and yet a consideration of the whole legislation, or of the cricumstances sur-

rounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislature intended to include the particular act.''

If it be conceded, however, that on account of inability of the agents of the state to furnish the license tags, certificates of ownership, and containers therefor, within the time limit prescribed by the act, the owners would thereby be relieved of all responsibility, criminal or otherwise, for failure to secure such tags and certificates so long as this condition exists, there still arises the further question of whether or not, during the month of December, the owner should have tendered, and the tax collector should have accepted, all fees or taxes prescribed by the act.

The penalty of one hundred per cent. of the amount of the fees or taxes prescribed by the act for a failure to promptly comply with the provisions thereof was undoubtedly intended to secure prompt compliance with the provisions of the act in reference to license and registration, as well as prompt payment of the fees, and, when all of the provisions of the act are considered and construed together, we think it is clear that it was the purpose of the legislature to require the agents of the state to deliver to the owners of motor vehicles this license tag and certificate of ownership at the time the fees or taxes are paid, and that the owners were not required to pay these fees or taxes until it was possible for them to secure the license and indicia of ownership, which would, under the terms of the act, confer upon them the full and complete right to use such vehicles on the streets and highways of the state. Under the provisions of the act, the state assumed the duty and obligation of furnishing, through its duly designated agents, the license tag and certificate of ownership, upon the payment of the fees prescribed in the act, and we do not think it can require a penalty of its citizens for failure to comply with the provisions of the act, when such

failure is due solely to the fact that it is impossible for the state to provide the means which would render compliance possible.

In the case at bar, it appears from the averments of the special plea, which the demurrer admitted to be true, that it was impossible for the auditor of public accounts, or the tax collector of Alcorn county, to secure for that county, during the month of December, 1926, these licenses, tags, certificates of ownership, and containers therefor, and, inferentially, that this condition was brought about by the default of the manufacturer of these tags and containers, and it is a matter of general public notoriety that the same condition existed in all the counties of the state, and, this being true, we hold that owners of motor vehicles did not, by reason of their failure to pay, before January 1, 1926, the fees and secure the license tags and certificates of ownership prescribed by this act, incur the penalty thereby prescribed, and that they would not become in default and liable for this penalty until after the lapse of a reasonable time within which to comply with the provisions of the act after the removal of the conditions rendering compliance impossible.

In the case of *State* v. *Gish*, 168 Iowa, 70, 150, N. W. 37, Ann. Cas. 1917B, 135, upon facts practically identical with those here involved, the supreme court of Iowa, in a well-reasoned opinion, held that an automobile owner was not subject to criminal prosecution for a violation of the provisions of a statute of that state, requiring two number plates, with numbers corresponding to those of a certificate of registration, to be conspicuously displayed on the motor vehicle, when the failure of the owner to comply with the provisions of the statute was due to the inability of the state officials to furnish the plates, and, in discussing the statute, and the duty imposed thereby on the owner, the court said:

"The construction of the statute which is contended for by the state would require many thousands of ve-

hicles to stand unused waiting for some belated factory to perform its broken contract with the secretary of state. These considerations should not be overlooked in ascertaining the legislative intent, because these are conditions which arise naturally out of the practical operation of the law. . . . The purpose, of course, of statutory construction is to ascertain and declare legislative intent as expressed in the statute. It has often been held, however, that where a literal construction of a statute leads to absurdity or to manifest injustice or oppression, the courts will not be bound by literal terms, but will seek a construction consistent with a sense of justice, if possible, and will presume such to have been the intent of the legislature. . . . If the owner of a motor vehicle is otherwise free from default, his duty to attach and display his number plates as provided in section 12 [Acts 34th Gen. Assem., chapter 72] cannot arise until such number plates due him shall have been furnished by the secretary of state, as required by section 6, and implied by such section 12 as a fact accomplished. This duty imposed upon the owner by section 12 arises out of, and follows after, the performance of the requirements imposed upon the state official by section 6. It is therefore necessarily in abeyance until such antecedent requirement be performed. Any other construction would impose upon him an impossible duty. It is an old legal maxim, applicable to criminal cases especially, that there can be no obligation to perform the impossible, *Impossibilium nulla obligatio est.* For an application of this maxim, see authorities cited in 21 Cyc. 1741.''

It follows, from the view herein expressed, that the judgment of the lower court will be affirmed.

*Affirmed.*