GULF REFINING CO. *v.* STONE, STATE TAX COM'R.

(In Banc. Feb. 26, 1945.)

[21 So. (2d) 19. No. 35769.]

Green & Green, of Jackson, **T. W. Davis, Jr.**, of Purvis, and **J. S. Atkinson**, of Shreveport, La., for appellant.

718

Greek L. Rice, Attorney General, by Geo. H. Ethridge, Assistant Attorney General, and J. H. Sumrall, of Jackson, for appellee.

722

**Green & Green,** of Jackson, and **J. S. Atkinson,** of Shreveport, La., for appellant, in reply to questions propounded by the Court.

724

726

728

Greek L. Rice, Attorney General, by Geo. H. Ethridge, Assistant Attorney General, and J. H. Sumrall, of Jackson, for appellee, in answer to questions propounded by the Court.

**Watkins & Eager,** of Jackson, amicus curiae.

732

738

Argued orally by **Garner Green**, for appellant, and by **Geo. H. Ethridge**, for appellee.

**Griffith, J.,** delivered the opinion of the court.

By Secs. 1 and 2, Chap. 134, Laws 1944, there is levied an annual privilege tax upon every group, acting as a

unit, engaged in the business of producing or severing oil for commercial purposes, the tax being six cents per barrel, or 6% of the value, whichever is greater. The severance tax is expressly defined by the Act as a business or occupation tax, and we accept the definition without pause to inquire whether it is rather an excise tax more nearly like an income, or sales, tax. And Sec. 1(i) expressly provides further that the taxed activity "shall include any person owning any royalty or other interest in any oil or its value, whether produced by him, or by some other person in his behalf, either by lease contract or otherwise."

By Sec. 11 it is enacted that: "All oil produced or under the ground on producing properties . . . and all producing oil equipment, including wells, connections, pumps, derricks and other appurtenances actually owned by . . . the producer, and all leases in production, including mineral rights in producing properties, shall be exempt from all ad valorem taxes," etc.

Appellant is a lease holder, and in its operations in the production of oil under its leases it had extracted oil which amounted in severance taxes to $3,740.33, and this sum was paid, including that part assessed to the royalty holder, to the State Tax Commissioner under protest, and this action is to recover it from the state, on the complaint that the tax imposed is not a lawful charge—that the Act is unconstitutional.

Appellant's contention are in brief (1) that oil under the land is the property of the landowner or his transferee; that a tax upon its severance is a property tax and, for that reason, violates Sec. 112, Constitution of 1890, citing Thompson v. McLeod, 112 Miss. 383, 73 So. 193, L. R. A. 1918C, 893, Ann. Cas. 1918A 674. (2) That the exemptions contained in Sec. 11 of the Act evidence that the entire Act is an effort to levy a severance tax in lieu of an ad valorem tax, which appellant insists cannot be done, citing Chicago, R. I. & P. P. Co. v. Robertson, 122

Miss. 417, 84 So. 449, and that (3) even if the severance tax is valid as an occupation tax it cannot be imposed in part on the royalty holder who takes no personal part in the severance occupation.

It is apparent, upon mature consideration, that unless appellant's points (1) and (2) may find foundation in Sec. 112, Const., it has, so far as it is concerned, no case. The pertinent provisions of Sec. 112 are that taxation shall be uniform and equal throughout the state, and that property shall be assessed for taxes under general laws and by uniform rules according, and in proportion, to its true value.

We are of the opinion that, with the exception hereinafter mentioned, Sec. 112 has no application to the taxation of oil and gas, as separate property. In order that property may be taxable under that section it must be capable of assessment, which means that when corporeal property is involved it must be capable (1) of inspection, and after inspection of estimate and appraisal, and (2) of being made subject to a tax lien, and to a sale and delivery of the identical property, and not some other, to make the tax money in case of default in payment.

No man knows whether there is any oil under a particular tract of land, or if so how much and the quality thereof. To attempt to separately assess oil under the surface, or to add the supposed value thereof to a land assessment, would be to embark upon a pure speculation, and the rule that judgments may not be based upon conjecture applies as well to a judgment in an approved assessment roll as to any other.

It is not until the oil is brought to the surface, and being severed becomes personal property, that any opportunity of inspection and appraisal is afforded, and even then the oil seeks to escape so that it must be confined, wherefore, it goes immediately from the well through a pipe which conducts it to a pipeline, or to a temporary reservoir for speedy loading into tank cars, or directly to a local refinery or some other immediate local

consumption, or else to a storage tank awaiting sale, where for the first time it attains any such a state of permanency that it may be made the subject of an ad valorem tax, and of a lien for the payment thereof. But when that state has been reached all, or practically all, the activities for which the tax here involved is imposed have been performed, and even then only a part of the product ever finds a resting place in a storage tank for the length of time requisite to the ad valorem process. As a matter of fact no oil has been held in this state in storage tanks.

There is no present statute by which an ad valorem tax could be enforced against oil as separate property until it ha's reached a resting place of appreciable permanency in a storage tank, and we can think of no practicable plan by which it could be reached by the ad valorem process prior to that time; and as already mentioned, only a part of the product of the well ever comes to a permanent rest in a storage tank, and none has been so stored in this state. Constitutional and statutory provisions do not require to be done that which is impossible or thoroughly impracticable, Boyd v. Coleman, 146 Miss. 449, 463, 111 So. 600, which is another way of saying that what is impossible or thoroughly impracticable is not within a constitutional or statutory requirement.

It follows, therefore, that Sec. 112, Const., presents no impediment to the imposition of the occupation tax here involved—not intimating that it forms an impediment to such a tax upon other business occupations, but dealing only with the precise situation before us—and that Thompson v. McLeod and Chicago R. I. & P. R. Co. v. Robertson, supra, based as they are on Sec. 112, are not in point on our present inquiry. And for the same reason it follows that questions of ad valorem exemptions, and several others of the interesting matters discussed in the arguments, are not here material.

There is left, however, the stated contention under the foregoing numeral (3). In support of the contention in

behalf of the royalty holder appellant relies chiefly on the recent case, Ohio Oil Co. v. Wright, 386 Ill. 206, 53 N. E. (2d) 966. This subject was fully considered in Texas in Group No. 1 Oil Corporation v. Sheppard (Tex. Civ. App.), 89 S. W. (2d) 1021, and Trustees of Cook's Estate v. Sheppard (Tex. Civ. App.), 89 S. W. (2d) 1026, under a statute substantially similar to ours as regards the royalty holder, and there, as well as in Barwise v. Sheppard, 299 U. S. 33, 57 S. Ct. 70, 81 L. Ed. 23, the courts rejected the contention now made by appellant, and we concur in and follow those cases. It is only by means of the activities of the lessee in raising the oil to the surface that the royalty holder gets anything from the oil, and being thus essentially associated with the activities in the proceeds thereof, he is not to disassociate himself from the state's exactions in the identical operations by which the proceeds are realized. The protection to these operations afforded by the laws of the state, and their enforcement, extends to the benefit of the royalty holder as well as the operator himself. And inasmuch as the legislative declaration that the royalty holder shall share in the burden of the tax is based upon reason, it is not subject to rejection by a court on the contention that it is an arbitrary legislative fiat.

There is not to be gathered from what has been said herein that an oil or gas lease is not separately assessable, ad valorem. Such a lease or conveyance with the right of entry is an estate in land, subject to ad valorem taxation, but not including the oil or gas as a separate item of valuation. Nor are we saying, the question not being before us, that the cash value of land or leases for assessment purposes is to be reduced because the owners and others generally, in estimating its value, take into consideration its oil prospects. We may note, however, that the possible, as well as the probable, use to which it may be put in the future is always an imporant consideration in arriving at an appraisal of the over-all present value of any property, even though it is presently well known

that it may turn out that the property may never be used for any such contemplated purpose. We may take light in this regard from the formula laid down for assessment purposes by Sec. 9759, Code 1942—as it has been for more than fifty years—as follows: "It shall be the duty of each person fixing the value of his property to estimate the same at its cash value at the time of valuation, and not what it might sell for at a forced sale, but what he would be willing and would expect to accept for it if he were disposed to sell it." See also Sec. 9769, Code 1942. What we are saying is that any supposed quantity or quality oil under the surface is not to be taken into consideration as a specific item of valuation such for instance as is done with visible improvements on the land under the section last cited.

Affirmed.

### Partially Dissenting Opinion.

**Roberds, J.,** delivered a partially dissenting opinion.

I agree that the tax in question is valid as to the Gulf Refining Company itself, but not for the reasons stated in the majority opinion. For centuries the term "land" has included not only the surface of the soil but everything beneath it in its natural state. This includes all minerals under the surface. Fox v. Pearl River Lumber Co., 80 Miss. 1, 31 So. 583; Moss v. Jourdan, 129 Miss. 598, 92 So. 689; Stern v. Great Southern Land Co., 148 Miss. 649, 114 So. 739; Federal Land Bank of New Orleans v. Cooper, 190 Miss. 490, 200 So. 729; Pace v. State ex rel. Rice, 191 Miss. 780, 4 So. (2d) 270; Merrell Engineering, etc., Co. v. Capital Nat. Bank, 192 Miss. 378, 5 So. (2d) 666; Wight v. Ingram Day Lumber Co., 195 Miss. 823, 17 So. (2d) 196. That has always been the rule in this state and as to other jurisdictions it was said in the Merrell case, supra [5 So. (2d) 670].: "Moreover, it is well settled by the great weight of authority from other jurisdictions

that until brought to the surface and reduced to possession, oil or gas constitute an interest in real estate and not personal property." 1 Summers Oil & Gas, Perm. Ed., sec. 21, p. 26. When a landowner pays taxes on his land he has paid the taxes on all the minerals in place thereunder, whether such minerals are known or not. If this were not true no landowner would ever know he had paid his taxes. No person knows, without exploration, what is under the surface of a particular tract of land. If lack of knowledge of the substance of the under-earth prevents the under-earth from being taxed, then the landowner is liable for reassessment and repayment of taxes every time later developments disclose some information not known to the tax assessor when he made the assessment. The original opinion says, "No man knows whether there is any oil under a particular tract of land, or if so how much and the quality thereof." Neither does he know the existence, quantity, and quality of rock, ore, lime, coal, bauxite, or any other material thereunder. It will indeed be confusion confounded if landowners who have paid the tax assessments on their lands are liable to reassessment each time some unknown material thereunder is later brought to light. Again, when oil is discovered it is then known as a fact it does exist under that tract, and the payment of ad valorem taxes on that land is payment on the oil thereunder. In other words, if the oil is there, the taxes thereon have been paid.

Nor does the nature of oil call for a different rule. Oil is and must needs be confined in pools. It does not percolate or run like water under the earth. It is confined and imprisoned in a folded stratum. It cannot escape from this natural reservoir because of impenetrable rock and it is held there under great pressure. "From the very nature of the conditions under which it has been formed, under which it is preserved, its migrating movements are checked and hindered in almost all directions." 1 Summers Oil & Gas (Perm. Ed.), sec. 4, p. 12. It is

because of this pressure that the oil comes to the top of the earth when the overlying rock which has confined it is penetrated. Of course, this pool may cover a considerable area but the migration is confined to the pool and to the rock enclosure about it.

But regardless of this, it is settled with certainty in Mississippi that oil is taxable in place. This Court has many times held that the fee in realty may be horizontally severed into (1) the timber above the surface, (2) the surface, and (3) the minerals beneath. In the timber, the surface and the minerals separate fees may exist. See Mississippi cases cited above, especially the Pace and Wight cases. Indeed, the legislature itself has settled that question. By section 3146, Code 1930 (Section 9770, Code 1942), it is provided that whenever ". . . mineral, gas [coal], oil, timber or similar interests in real estate, . . . are owned separately and apart from . . . " the ownership of the surface, "all of such interests shall be assessed and taxed separately from such surface rights and interests in said real estate, and shall be sold for taxes in the same manner and with the same effect as other interests in real estate are sold for taxes." If oil rights are not assessable, then the state is under duty to repay every dime which it has received as taxes under such assessments.

However, as stated, I agree that the tax is valid as to the Gulf Refining Company, not for the reason stated, but because this is a privilege or occupation tax, and the legislature had the right and power to impose such tax for the privilege of engaging in the oil business in this state. The Act itself designates the tax as an "annual privilege tax upon every person engaging . . . in the business of producing, or severing oil . . . from the soil . . . " Sec. 2. The bill, in this case, alleges that the Refining Company "is engaged in the business of discovering, producing, and marketing crude oil."

It is true the Act exempts from ad valorem taxes certain property owned by the Refining Company. Whether

it, as a beneficiary of the exemption, is, or is not, thereby precluded from challenging the validity of the law on the ground of the exemption (see Dunn et al. v. Love, 172 Miss. 342, 155 So. 331, 92 A. L. R. 1323; City of Jackson v. Mississippi Fire Ins. Co., 132 Miss. 415, 95 So. 845; Miller v. Lamar Life Ins. Co., 158 Miss. 753, 131 So. 282), the Act is not, in my opinion, unconstitutional because of it, since the legislature had the power to impose the tax without the exemption.

However, I cannot agree that the tax is valid as to the lessor—land, or royalty, owner, whom I will call the owner. Under no theory can such owner be liable for this tax.

If the tax here levied is considered a property tax, as is claimed by the appellant Refining Company and denied by appellee, then, as shown above, the taxes have already been paid and this levy, as to the owner, is double taxation on such property.

If it is a privilege tax, as the Act so designates it, then the legislature has no power to tax the owner for the privilege of producing the oil from his own land. In the case of Thompson v. McLeod, 112 Miss. 383, 73 So. 193, 194, L. R. A. 1918C, 893, Ann. Cas. 1918A, 674, this Court held that a law undertaking to impose an annual privilege tax upon a person extracting turpentine from standing timber on his own land was invalid. The Court said: "This act strikes down the inherent right of the property owner to lay hand upon his own property. Every owner of a pine tree enjoys the same natural right to extract gum from the tree as the owner of a vineyard has to pluck his own grapes. It would be the same thing to require a privilege tax as a precedent right of the owner to pull the ripe pecans from his pecan orchard or to enjoy a drink of pure water from the cool spring of the old homestead." To this might be added, that if this tax is valid, the legislature has the same right to tax a landowner for the privilege of picking and ginning the cotton grown upon his land for the purpose of sale, or for the privilege of cutting and baling his hay for such purpose. As was

well said in Thompson v. Kreutzer, 112 Miss. 165, 72 So. 891, "Ownership is not a privilege conferred by government, but is one of the rights which governments were organized to protect." See also Dawson v. Kentucky Distillery & Warehouse, 255 U. S. 288, 41 S. Ct. 272, 65 L. Ed. 638; State ex rel. Knox v. Gulf, M. & N. R. Co., 138 Miss. 70, 104 So. 689; Barnes v. Jones, 139 Miss. 675, 103 So. 773, 43 A. L. R. 673; Stone v. General Contract Purchase Corporation, 193 Miss. 301, 7 So. (2d) 806, 140 A. L. R. 1029; Ohio Oil Co. v. Wright, 386 Ill. 206, 53 N. E. (2d) 966; State v. Stiles, 137 La. 540, 68 So. 947; Hixon v. School Dist. of Marion, 187 Ark. 554, 60 S. W. (2d) 1027; Jensen v. Henneford, 185 Wash. 209, 53 P. (2d) 607. This tax is not to be confused with a sales tax.

The McLeod case, supra, is much stronger in support of the validity of the tax than the case at bar. In that case there is no question that the landowner was himself engaged in the business of extracting the turpentine for sale on the market. In the case at bar the owner admittedly is not himself actually engaged in the oil business. If he is so engaged, it is because the Refining Company is either his agent or there is a joint enterprise.

There is no agency. The landowner has no control or power whatever over the method, manner, or means of production. To constitute the Refining Company his agent, he must have such power or authority. The lessee simply agrees that for his lease he will deliver to the owner on the premises one eighth of the oil produced. This is payment for the lease. The Refining Company furnishes all machinery and equipment and labor and produces the oil in its own way, under its own methods, and by its own means. The owner has no say-so whatever. Can it be said that if the Refining Company negligently caused the death of an employee during such operation that the owner would be liable for such negligence? Suppose the owner died leaving as his only heir a child just born. Is that child engaged in the oil business? It is clear to me the oil company is not the agent of the owner.

Nor are they engaged in a joint enterprise.. It is one of the absolute essentials of such enterprise that all members thereof have mutual control and authority over the operations. Sample v. Romine, 193 Miss. 706, 8 So. (2d) 257, 9 So. (2d) 643, 10 So. (2d) 346. It is not claimed in this case that the owner has any control or authority over the method, means, or manner of producing the oil.

In my opinion the case should be affirmed as to the Refining Company, but reversed and judgment here as to the owner.

DISSENTING OPINION.

**Smith, C. J.**, delivered a dissenting opinion.

Oil produced (i. e. taken from the earth or water, section 1, Par. i of the statute we are considering) and oil producing machinery are, of course, property. So, also, is oil "under the ground," as it is a part of the land in which it lies. It is owned, either by the landowner, or separately by another who has been invested with title thereto. Consequently, all of this property must be taxed, under section 112 of our Constitution, if taxed at all, in proportion to its value uniformly and equally with other property. Our statutes other than the one we are now considering contemplate that oil, while in the ground, shall be taxed as a part of the land in which it lies; or separately from the land if separately owned, section 9770, Code 1942.

The pertinent portions of section 11 of Chap. 134, Laws 1944, which we are now considering, are set forth in the majority opinion herein; and section 14 thereof is as follows: "If any clause, sentence, paragraph or part of this act shall, for any reason, be adjudged by any court of competent jurisdiction to be invalid, which changes or materially affects the scheme and method of taxation herein provided for, or which in anywise prevents or modifies the exemptions *provided for under section 11*

*hereof, then the whole of the act shall be invalid,* and every law which this act amends, modifies or repeals shall become operative and in full force and effect.''. (Italics. mine.)

It is manifest from these two sections of the statute that the privilege tax levied by section 2 thereof on persons producing oil, for profit, or commercial purposes, was adopted by the legislature as a substitute for the ad valorem tax on oil in and produced from land. Such a tax violates section 112 of the Constitution, and is void. Adams v. Mississippi State Bank, 75 Miss. 701, 23 So. 395; Adams v. Bank of Oxford, 78 Miss. 532, 29 So. 402; Thompson v. Kreutzer, 112 Miss. 165, 72 So. 891; Chicago, etc., R. Co. v. Robertson, 122 Miss. 417, 84 So. 449; Reed Bros., Inc. v. Board of Supervisors, 126 Miss. 162, 88 So. 504.

Counsel for the state admit that this would be true ordinarily, but they say that section 112 of the Constitution does not apply here, for the reason, as they say, that oil beneath the surface of the ground cannot be assessed for taxation, either as a part of the land in which it lies, or separately therefrom, for the reason that prior to its removal from the land its existence vel non, and its amount and value, cannot be ascertained. All of this may be true, as to which I am not in position to express an intelligent opinion; but this is a question of fact, to be determined on evidence, the answer to which was for the legislature when enacting this statute. Whether the answer which the legislature made thereto is right or wrong, the constitutionality vel non of this statute which it enacted pursuant thereto, must be tested thereby. What the legislature intended to do, and thought it had done by section 11 of the statute, was to relieve the property described therein from the burden of ad valorem taxes, under which the legislature thought it then rested, but substituting a privilege tax therefor; and by section 14 of the statute it expressly declared that if section 11 thereof is invalid—i. e. has no force or effect—then

neither shall section 2 thereof have any force or effect. Each is tied to the other, and both are to be effective, or neither shall be. The statute is lengthy and carefully drawn, and it is manifest therefrom that the legislature did not intend to impose the privilege tax set forth in section 2 thereof, unless at the same time it had relieved oil in, and produced from, land from the burden of ad valorem taxes under which it then rested; and there is nothing in the statute to indicate that the legislature would have enacted section 2 thereof if no necessity existed for section 11 thereof, in order to relieve this property from the burden of ad valorem taxes.

All of this discussion as to whether oil can be taxed while in the ground would seem to be beside the mark, for the state's land assessment rolls are so ruled as to require the return of oil and gas beneath the surface of the ground by the owner thereof for taxation; such returns are being made, and ad valorem taxes are being collected thereon. But oil, while in the ground, is not the only property exempted from ad valorem taxes by section 11 of the statute. Oil that has been produced—extracted from the ground—is also exempted, as is also oil production equipment. No claim is made that the latter cannot be assessed for taxation; but as to the first, it is said it is impossible to assess oil after it has been extracted from the ground for the reason that the producers do not permit it to come to rest after reaching the surface of the ground, and remain there long enough for the tax assessor to assess it. I do not know whether this is being done or not; but I do know that the legislature can prohibit it from being done; and, also, that provision can be made for measuring the quantity and value of the oil as it leaves the well and begins its journey to its ultimate destination. This is being done under sections 6 and 11 of the statute we are now considering, and the tax collected under section 2 of the statute is based thereon.