The California Company *v.* State of Mississippi,
W. D. Neal, Auditor and A. H. Stone,
State Tax Commissioner.

No. 39254          October 11, 1954          74 So. 2d 856

*Wells, Thomas & Wells,* Jackson, for appellant.

*John E. Stone,* Asst. Atty. Gen., Jackson, for appellees.

APPELLANT IN REPLY.

ARRINGTON, J.

On March 1, 1949, the United States of America, acting through the Bureau of Land Management, leased certain lands in the Homochitto National Forest in Franklin County, Mississippi, to one Nan Gridley; said lease pro-

viding that the United States was to have one-eighth of all oil produced from said lands, or one-eighth of the value of said oil. Subsequently, an operating agreement was entered into by and between Nan Gridley and The California Company. In July, 1949, The California Company drilled on said land and brought in a producing well. From July, 1949, until March, 1952, The California Company paid the Mississippi oil severance tax imposed by Chapter 134 of the Laws of 1944 on the total production from said well. In June, 1952, The California Company filed with the Auditor of Public Accounts a claim for a refund of such oil severance tax so paid by it on that one-eighth part of the production of said well owned by the United States in the amount of $1,373.19. The California Company had paid to the United States one-eighth of the value of the oil produced from the well, and the United States had refused to allow The California Company to deduct taxes so paid from the amount due it under the lease. The claim was disallowed and The California Company appealed said decision to the Chancery Court of the First Judicial District of Hinds County. The chancellor denied The California Company the relief sought, holding that they were liable for the severance tax on the total production of the well. The California Company now prosecutes this appeal from the decree of the Chancery Court.

The California Company bases its claim for a refund of the oil severance tax paid by it on the one-eighth of the production owned by the United States on the theory that the State of Mississippi cannot constitutionally tax the activities of the federal government, and that, insofar as the oil severance tax is applied to the one-eighth of the production owned by the United States of America, Chapter 134 of the Laws of 1944 (Secs. 9417-01—9417-15, Code of 1942) is unconstitutional. The California Company contends that if the Mississippi oil severance tax be levied on the federal government to the extent of the

one-eighth of production owned by it rather than upon The California Company, then they are not liable for said tax.

■■■ The decision of this appeal is determined by the applicable Mississippi statutes, inasmuch as under Chapter 134 of the Laws of 1944 the oil severance tax of the State of Mississippi is levied and imposed directly upon the owners of the oil in proportion to their interest in the oil. Where the United States owns an interest in a producing oil well, the Mississippi oil severance tax is a direct levy upon the property of the federal government, and as such is unconstitutional to that extent.

Section 1(i), Chapter 134, Laws of 1944, provides that "the word 'producer' means any person, owning, controlling, managing, or leasing any oil property, or oil well, and any person who produces in any manner any oil by taking it from the earth or water in this state, and shall include any person owning any royalty or other interest in any oil or its value, whether produced by him, or by some other person on his behalf, either by lease contract or otherwise." Under this section, any owner of an interest in the oil produced from a well is made a "producer" for the purposes of this chapter, whether engaged in the actual operation of the well or not. The royalty owner, the United States of America, being a "producer" just as The California Company, the actual operator of the well, is a "producer." Gulf Refining Co. v. Stone, 197 Miss. 713, 21 So. 2d 19.

Section 2 of said chapter provides that "there is hereby levied, to be collected hereafter, as provided herein, . . ." an annual privilege tax based on the number of barrels of oil produced or the value of said barrels of oil dependent upon which rate would produce the higher tax. This section provides that the tax is a "privilege tax"; that the sole method of computing the tax is by applying the rates to the number of barrels, or

the value, of the oil produced and that it shall be collected as hereinafter provided.

Section 4 of the act is the section which deals with how the oil severance tax is levied and collected. This section, when considered with Section 1(i), as must be done, forecloses the question as upon whom the oil severance tax is levied. Said section provides that "the tax hereby imposed is levied upon the producers of such oil in the proportion of their ownership at the time of severance, but, except as otherwise herein provided, shall be paid by the person in charge of the production operations, who is hereby authorized, empowered, and required to deduct from any amount due to producers of such production at the time of severance the proportionate amounts of the tax herein levied before making payments to such producer; . . . ."

From this section, it is clear that the tax is levied in the first instance on the "producers of such oil"; and in this instance, by the clear and judicially construed meaning of Section 1(i) of the act, both the United States of America and The California Company are "producers" for the purposes of Chapter 134 of the Laws of 1944. Under the statutory formula, the United States is a "producer," and as such the Mississippi oil severance tax is levied upon it to the extent of the one-eighth interest owned by the United States. Consequently, Chapter 134, Laws of 1944, is unconstitutional insofar as it attempts to impose a severance tax upon the United States of America.

"The supremacy of the Federal Government in our Union forbids the acknowledgment of the power of any state to tax property of the United States against its will. Under an implied constitutional immunity, its property and operations must be exempt from state control in tax, as in other matters. M'Culloch v. Maryland, 4 Wheat. (US) 316, 425, et seq., 4 L. Ed. 579, 606; Van Brocklin v. Tennessee (Van Brocklin v. Anderson), 117

U. S. 151, 177, 29 L. Ed. 845, 854, 6 S. Ct. 670; United States v. Allegheny County, 322 U. S. 174, 176, 177, 88 L. Ed. 1209, 1213, 1214, 64 S. Ct. 908.'' S. R. A., Inc. v. State of Minnesota, 327 U. S. 558, 90 L. Ed. 851.

Section 4(a) provides that the person in charge of production operations, The California Company, shall pay the tax, and in turn is authorized, and even required, to deduct from any amounts due other producers the proportionate amount of the tax levied. In other words, the person in charge of production is required to collect the severance tax from the other ''producers'' for the State of Mississippi, and in turn required to deduct the amount of the tax from the amounts due the other producers for their interest in the oil. It is clear that the severance tax is not levied directly upon the person in charge of production, but that the tax is levied in the first instance on the owners of the oil in proportion to their interest.

If the Mississippi oil severance tax imposed by Section 134, Laws of 1944, is levied upon the United States of America, as we hold it is, then The California Company, as the person in charge of production, cannot be compelled to collect the tax from the United States Government which is exempted from the payment of the tax; and which the United States has refused to allow The California Company to deduct from the amounts due it under the terms of its lease. The California Company was entitled to a credit for the amount of the tax which would ordinarily be charged to the holder of the royalty interest.

Decree reversed and judgment entered here for the appellant.

*McGehee, C. J.,* and *Kyle, Ethridge* and *Gillespie, JJ.,* concur.