# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-CA-00712-SCT

*JONES COUNTY SCHOOL DISTRICT AND*
*JONES COUNTY SCHOOL BOARD*

*v.*

*MISSISSIPPI DEPARTMENT OF REVENUE f/k/a*
*MISSISSIPPI STATE TAX COMMISSION;*
*MISSISSIPPI STATE OIL & GAS BOARD; BEAN*
*RESOURCES, INC.; DENBURY RESOURCES,*
*INC.; AND VENTURE OIL & GAS, INC.*

*AND*

*MISSISSIPPI DEPARTMENT OF REVENUE f/k/a*
*MISSISSIPPI STATE TAX COMMISSION*

*v.*

*JONES COUNTY SCHOOL DISTRICT; JONES*
*COUNTY SCHOOL BOARD; BEAN RESOURCES,*
*INC.; DENBURY RESOURCES, INC.; VENTURE*
*OIL & GAS, INC.; AND THE SECRETARY OF*
*STATE OF THE STATE OF MISSISSIPPI*

*AND*

*THE SECRETARY OF STATE OF THE STATE OF*
*MISSISSIPPI*

*v.*

*MISSISSIPPI DEPARTMENT OF REVENUE f/k/a*
*MISSISSIPPI STATE TAX COMMISSION*

*AND*

*BEAN RESOURCES, INC.; DENBURY
RESOURCES, INC.; AND VENTURE OIL & GAS,
INC.*

*v.*

*MISSISSIPPI DEPARTMENT OF REVENUE f/k/a
MISSISSIPPI STATE TAX COMMISSION AND
MISSISSIPPI STATE OIL & GAS BOARD*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/02/2011 |
| TRIAL JUDGE: | HON. FRANKLIN C. MCKENZIE, JR. |
| COURT FROM WHICH APPEALED: | JONES COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | TERRY L. CAVES |
| | JERRY DEAN SHARP |
| | WILLIAM GARNER CHENEY, JR. |
| | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ROGER GOOGE, JR. |
| | NANCY MORSE PARKES |
| ATTORNEYS FOR APPELLEES: | JAMES L. POWELL |
| | BRIDGETTE TRENETTE THOMAS |
| | STEPHANIE V. ROGERS |
| | HOWARD O. LEACH |
| | JOHN JEFFREY TROTTER |
| | GLENN GATES TAYLOR |
| | C. TED SANDERSON, JR. |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED IN PART; REVERSED IN PART AND REMANDED - 03/07/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     This case concerns three main issues.  The first issue is whether a school district is liable for oil and gas severance taxes on its royalty interests derived from oil and gas production on sixteenth-section land.  The chancellor ruled that it is not.  He found that

sixteenth-section lands are held in trust for the benefit of local township schools and that payment of severance taxes diverts money from the purposes of that trust. The second issue is whether the statute of limitations restricts the time period in which a school district can seek a refund of severance taxes that it had paid erroneously. The chancellor ruled that a three-year statute of limitations applied to any refund claims. The final issue is whether a school district is liable for administrative expense taxes on its royalty interests derived from oil and gas production on sixteenth-section land. The chancellor ruled that it is. He characterized these assessments as fees, not taxes, and reasoned that trustees are allowed to pay reasonable expenses associated with administering trust property.

¶2. This Court finds that the judgment should be affirmed in part and reversed in part. First, we acknowledge that school districts are not liable for oil and gas severance taxes on sixteenth-section royalty interests, but for different reasons than those cited by the chancellor. School districts, as political subdivisions of the state, are not included within the definition of "persons" made subject to these taxes. Second, pursuant to Article 4, Section 104 of the Mississippi Constitution, statutes of limitation in civil causes do not run against the state or its subdivisions. The chancery court, however, should make a determination as to whether the doctrines of waiver and/or estoppel apply in this case. Finally, school districts are liable for administrative expense taxes on sixteenth-section royalty interests. These assessments are "fees," not "taxes"; the Legislature has expressly made the state and its subdivisions subject to these fees; and no constitutional provision or other law is violated by requiring school districts to pay them.

## FACTS

3

¶3. The Jones County School Board, which governs the Jones County School District, leased sixteenth-section property to Venture Oil & Gas, Inc., for oil, gas, and mineral exploration. The School District reserved a one-eighth royalty interest. From November 1, 1997, to September 30, 2006, Venture withheld the School District's proportionate share of oil and gas severance taxes from the School District's royalty interest and remitted those taxes on behalf of the School District.

¶4. In 2006, Venture and the School District learned of three Attorney General opinions that had concluded that school districts' royalty interests from oil and gas production on sixteenth-section lands are not subject to any severance tax. These opinions are discussed *infra* in Issue I.B.2. Based on those opinions, Venture and the School District requested a refund of $248,277 from the Mississippi Department of Revenue.[1] Months later, they also requested a refund from the Mississippi State Oil and Gas Board of administrative-expense taxes that Venture had paid to the Oil and Gas Board on the School District's behalf.

¶5. The Department of Revenue denied Venture's and the School District's request for a severance-tax refund. It found that Venture was "liable for the full amount of the severance tax," and it rejected the argument that no severance tax was owed just because oil and gas production had occurred on state-owned land. Thereafter, Venture continued to withhold the School District's portion of the severance taxes, but it did not remit those taxes to the Department of Revenue.

_____

[1] In 2009, as this litigation was pending, the Legislature eliminated the Mississippi State Tax Commission and created the Mississippi Department of Revenue and the Mississippi Board of Tax Appeals in its stead. 2009 Miss. Laws 1228-1379; *see* Miss. Code Ann. § 27-3-1 (Rev. 2010).

¶6. The Oil and Gas Board, in contrast, initially granted a maintenance-tax refund of $8,338. But, more than one year later, the Oil and Gas Board changed its stance. It took the position that school districts are required to pay administrative-expense taxes on royalty interests derived from oil and gas production on sixteenth-section lands.

¶7. Aggrieved by the Department of Revenue's decision, Venture and the School District filed suit in the Chancery Court of the Second Judicial District of Jones County. Venture and the School District requested that the Department of Revenue be ordered to refund severance taxes paid from November 1, 1997, to September 30, 2006, and sought "temporary, preliminary, and permanent injunctive and declaratory relief" against further imposition of any severance taxes.

¶8. Just before filing suit, the School District had written a letter to the Department of Revenue and to the Oil and Gas Board. In its letter to the Department of Revenue, the School District requested additional refunds for severance taxes that Eagle Oil and Gas Co.; Denbury Energy Services, Inc.; and Bean Resources, Inc., had paid on its behalf. The total refund request exceeded $2 million. The Department of Revenue responded that, according to its records, the School District itself had never filed an "Oil and Gas Severance tax return." Thus, it denied the School District's refund request because "only [a] taxpayer can seek refund of an overpayment of taxes." In its letter to the Oil and Gas Board, the School District likewise sought a refund for maintenance taxes that Eagle and Denbury had paid on its behalf.

¶9. More than two months after its initial suit, the School District filed a second suit. It and the School Board filed suit against Venture, Eagle, Denbury, and Bean (collectively "the

5

Oil Companies"). The Department of Revenue and the Oil and Gas Board later were added as defendants, and the Secretary of State[2] was allowed to intervene as a party plaintiff. The School District, the School Board, and the Secretary of State (collectively "the Plaintiffs") requested: (1) an accounting of all severance and administrative-expense taxes that had been paid to the Department of Revenue and to the Oil and Gas Board; (2) a declaratory judgment that the School District was not obligated to pay severance or administrative-expense taxes on royalties derived from oil and gas production on sixteenth-section land; (3) a preliminary injunction to prohibit the Oil Companies from remitting any future severance or administrative-expense tax payments to the Department of Revenue or to the Oil and Gas Board on the School District's behalf; and (4) an order directing the Department of Revenue and the Oil and Gas Board to refund any severance or administrative expense taxes that the Oil Companies had paid on the School District's behalf. The Plaintiffs further asserted that the Oil Companies had breached a fiduciary duty by wrongfully paying severance and administrative-expense taxes on the School District's behalf.

¶10.    The Oil Companies, in response, asserted cross-claims against the Department of Revenue and the Oil and Gas Board to recover any severance or administrative-expense taxes that they had paid erroneously. Bean and Venture, furthermore, asked the chancellor to enjoin the Department of Revenue and the Oil and Gas Board from attempting to collect severance and administrative-expense taxes on the School District's royalty interests.

¶11.    The two suits were consolidated, and all the parties requested summary judgment.

_____

[2] The Order on Motion for Intervention states the Attorney General authorized the Secretary of State to intervene in this case. *See* Miss. Code Ann. § 7-5-1 (Rev. 2002).

6

¶12.    After conducting a hearing, the chancellor issued his findings of fact and conclusions of law.  The chancellor first found that the State holds title to sixteenth-section property in trust for the benefit of schools within the local township; that all revenue derived from sixteenth-section property must be used exclusively for the benefit of those schools; and that the Department of Revenue had misappropriated trust funds by collecting severance taxes on the School District's royalty interests and distributing those moneys to general-revenue funds and to other school districts.  Accordingly, the chancellor reversed and rendered the Department of Revenue's denial of Venture's and the School District's request for a refund.  The chancellor further enjoined the Department of Revenue from levying and collecting severance taxes from the Oil Companies on the School District's royalty interests.[3]  Second, the chancellor labeled the assessments levied by the Oil and Gas Board as fees, not taxes.  The chancellor stated that these assessments fund the regulatory and enforcement functions of the Oil and Gas Board and that the Plaintiffs had benefitted from the Oil and Gas Board's services.  The chancellor reasoned that such fees were reasonable expenses associated with the administration of trust property, and therefore, no fiduciary duties had been violated.  Accordingly, the chancellor granted the Oil and Gas Board's Motion for Summary Judgment.

¶13.    After the chancellor had issued his findings of fact and conclusions of law, the parties entered an agreed order for the chancellor to amend his findings of fact and conclusions of

---

[3] In its motion for summary judgment, Eagle included an affidavit by its vice president, who represented that Eagle did not hold leases on sixteenth-section lands in Jones County.  None of the parties disputed this assertion.  Thus, the chancellor granted summary judgment for Eagle and dismissed all claims against it with prejudice.  Eagle is not a party to this appeal.

law to address whether any or all of the School District's refund claims were barred by the statute of limitations or the doctrines of laches, estoppel, or waiver.

¶14. Following the parties' agreed order, the chancellor entered supplemental findings of fact and conclusions of law. He found that the three-year statute of limitations under Section 27-73-5 of the Mississippi Code allowed the School District to seek a refund only for taxes it had paid since July 2, 2005; this was three years prior to the date that Venture and the School District had filed their initial suit. The chancellor distinguished other cases that had held that statutes of limitation do not run against the state or its political subdivisions. Those cases, he said, had involved litigation between the state and a private party; this case, in contrast, featured one political subdivision of the state suing another. The chancellor also reasoned that, since the state has the sovereign power to create or abolish local units of government, it has the power to establish and impose statutes of limitation upon its creations.

¶15. The chancellor entered a Rule 54(b) Final Judgment[4] that incorporated by reference his initial and supplemental findings of fact and conclusions of law.

¶16. The Mississippi Department of Revenue now appeals and raises one issue:

**Whether the [c]hancellor erred in finding that the severance taxes imposed by §§ 27-25-501 *et seq.* and 27-25-701 *et seq.*, Miss. Code Ann., are not owed on production of oil and gas that is allocable to a public school district's royalty interest that is owned by a public school district.**

¶17. The School District and the School Board appeal and raise three issues:

**I.      Whether the [c]hancellor erred in finding that the statute of limitations provided by Miss. Code Ann. § 27-73-5 limits the Jones County School District's claim for [a] refund of severance taxes.**

---

[4]*See* Miss. R. Civ. P. 54(b).

8

II.     **Whether the [c]hancellor erred in granting the Oil and Gas Board's Motion for Summary Judgment finding that the Oil and Gas Board is authorized by law to charge an administrative expense tax against the Jones County School District's royalty interest.**

III.    **Whether the [c]hancellor erred in his finding that the time period for requesting a refund or filing a contest of the severance tax is three years prior to the date of the filing of the [c]omplaint.**

¶18.    The Secretary of State also appeals and raises the following issue:

**Whether the [c]hancellor erred in finding that the statute of limitations provided by Miss. Code Ann. § 27-73-5 limits a political subdivision's claim for [a] refund of severance taxes to three years prior to the date of filing the [c]omplaint.**

Bean, Denbury, and Venture appeal as well and join the briefs filed by the School District, the School Board, and the Secretary of State. The Secretary of State, notably, did not oppose the Oil and Gas Board's Motion for Summary Judgment and does not appeal the chancellor's ruling in favor of the Oil and Gas Board.

## DISCUSSION

¶19.    Before addressing the issues on appeal, an overview of both the nature and ownership of sixteenth-section lands is set out below. The basic structure of the oil-and-gas-severance-tax laws is provided as well. The administrative-expense tax scheme is discussed later, in Issue III.

*Sixteenth-Section Lands*

¶20.    The origins of public-school lands predate Mississippi's statehood. ***Papasan v. Allain***, 478 U.S. 265, 27-71, 106 S. Ct. 2932, 2936-37, 92 L. Ed. 2d 209 (1986). In 1803, the United States Congress set aside "'the section number sixteen'" of every township in the

9

Mississippi Territory to be reserved "'for the support of schools within the same.'" *Papasan*, 478 U.S. at 271 (quoting 2 Stat. 233-34). And in 1815, Congress authorized the leasing of sixteenth-section lands to raise financial support for schools within the Territory. *Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 269 F.3d 494, 498 (5th Cir. 2001) (citing Act of Jan. 9, 1815, 3 Stat. 163).

¶21. When Mississippi became a state in 1817, Congress directed that "'the section No. 16 in each township . . . shall be reserved for the support of schools therein.'" *Papasan*, 478 U.S. at 271 (quoting 3 Stat. 375 (1817)).[5] Accordingly, Article 6, Section 20 of the Mississippi Constitution of 1817 directed the Legislature to "take measures to preserve from unnecessary waste or damage such lands as are or may hereafter be granted by the United States for the use of schools, within each township in this State, and apply the funds which may be raised from such lands, by rent or lease, in strict conformity to the object of such grant . . . ." Miss. Const. art 6, § 20 (1817). Mississippi's current Constitution provides that: "The Legislature shall enact such laws as may be necessary to ascertain the true condition of the title to the sixteenth section lands in this state . . . and shall provide that the sixteenth section lands reserved for the support of township schools . . . shall not be sold nor shall they be leased" except as provided under the terms of Article 8, Section 211. Miss. Const. art. 8, § 211 (1890).

¶22. From their beginnings, sixteenth-section lands have been held to be trust lands for the benefit of public schools. *Hill v. Thompson*, 564 So. 2d 1, 5-6 (Miss. 1989) (citations

---

[5] The creation of sixteenth-section lands and "lieu lands" is discussed in detail in *Papasan*, 478 U.S. at 268-73.

10

omitted). These lands are held in two trusts: one federal and one state. *Lipscomb*, 269 F.3d at 510. The federal trust is purely honorary; Mississippi holds absolute title to sixteenth-section lands without federal restriction. *Id.* at 507 (citing *Madison County Bd. of Educ. v. Illinois Cent.R.R. Co.*, 939 F.2d 292, 305 (5th Cir.1991), *abrogation on other grounds recognized by Lipscomb*, 269 F.3d at 508 n.72). In some cases, this Court has suggested that the trust is federally enforceable. *Hill*, 564 So. 2d at 6 (stating that "[t]he school lands trust was federally created and is federally enforceable") citing *Papasan*, 478 U.S. at 268-72)); *Turney v. Marion County Bd. of Educ.*, 481 So. 2d 770, 776 (Miss. 1985) (stating that the Attorney General of the United States may enforce the trust) (citing *Lassen v. Arizona*, 385 U.S. 458, 460, 87 S. Ct. 584, 585, 17 L. Ed. 2d 515 (1967)). But the United States Court of Appeals for the Fifth Circuit has explained that early sixteenth-section land grants, which included Mississippi's, conveyed title in fee simple and that the federal trust is purely honorary as to those grants. *Id.* at 507 (citing *Cooper v. Roberts*, 59 U.S. 173, 181-82, 18 How. 173, 15 L. Ed. 338 (1855); *Alabama v. Schmidt*, 232 U.S. 168, 173-74, 34 S. Ct. 301, 58 L. Ed. 555 (1914)). Regardless, it is clear that, under Mississippi state law, sixteenth-section lands are held in a binding trust. *Lipscomb*, 269 F.3d at 507-08 (citing, *e.g., Morrow v. Vinson*, 666 So. 2d 802, 805-06 (Miss. 1995)).

¶23. The State is the titleholder of sixteenth-section lands, *Hill* 564 So. 2d at 6 (citing *Turney*, 481 So. 2d at 776), which it holds "in trust for the benefit of the public schools." Miss. Code Ann. § 29-3-1(1) (Rev. 2010). The beneficiaries, more specifically, are "the inhabitants of the respective townships." *Turney*, 481 So. 2d at 777 (citing *Jones v. Madison County*, 72 Miss. 777, 18 So. 87 (1895)); *see also* Miss. Const. art. 8, § 211

11

(identifying sixteenth-section lands as having been "reserved for the support of township schools").

¶24. The State, as titleholder, has delegated general supervisory authority over sixteenth-section lands to the Secretary of State. *Turney*, 481 So. 2d at 777; Miss. Code Ann. § 29-3-1(1) (Rev. 2010).[6] As a matter of practical necessity, these lands are managed through local county boards of education. *Turney*, 481 So. 2d at 777. Section 29-3-1(1) states that: "The board of education under the general supervision of the [Secretary of State], shall have control and jurisdiction of [sixteenth-section] lands and of all funds arising from any disposition thereof heretofore or hereafter made." Miss. Code Ann. § 29-3-1(1) (Rev. 2010). School boards are directed to manage these lands, and all funds derived therefrom, as trust property and to ensure that adequate compensation is received for all usage. Miss. Code Ann. § 29-3-1(1) (Rev. 2010). School boards thus stand as "trustee[s] and as trust supervisors or managers" of sixteenth-section lands. *Hill*, 564 So. 2d at 7.

¶25. In their role as trustees, school boards are authorized and empowered to lease sixteenth-section lands for oil, gas, and mineral exploration. Miss. Code Ann. § 37-7-305 (Rev. 2007); *see also* Miss. Code Ann. § 29-3-99 (Rev. 2010). Royalties received from the sale of oil and gas are deposited into the local school board's principal fund, which Section 29-3-113 says "shall be a permanent township fund." Miss. Code Ann. § 29-3-113 (Rev.

---

[6] Section 29-3-1 gives general supervisory authority to the "state land commissioner." Miss. Code Ann. § 29-3-1(1) (Rev. 2010). The office of state land commissioner, however, was abolished in 1980 and all of its duties and responsibilities were transferred to the office of the Secretary of State. *Turney*, 481 So. 2d at 776 (citing Miss. Code Ann. § 7-11-2 (Supp. 1984)).

2010).  Further, Section 29-3-109 directs that "[a]ll expendable funds derived from sixteenth section or lieu lands shall be credited to the school districts of the township in which such sixteenth section lands may be located."  Miss. Code. Ann. § 29-3-109 (Rev. 2010).  That statute also states that "[s]uch funds shall not be expended except for the purpose of education of the educable children of the school district to which they belong, or as otherwise may be provided by law."  Miss. Code. Ann. § 29-3-109 (Rev. 2010).

*Oil and Gas Severance Taxes*

¶26.    Mississippi imposes annual severance taxes on oil and gas production within the state. Miss. Code Ann. §§ 27-25-503(1), 27-25-703(1) (Rev. 2010).  The oil severance tax statutes are in Chapter 25, Article 5 of the Mississippi Code, and the natural-gas severance tax statutes are in Article 7 of that same chapter.  Miss. Code Ann. §§ 27-25-501 to 27-25-525, 27-25-701 to 27-25-723 (Miss. 2010).  Article 5 and Article 7 are very similar and often use identical language.

¶27.    Oil and gas severance taxes are levied "upon the entire production in this state" and accrue at the time the oil or gas is severed from the soil or water.  Miss. Code Ann. §§ 27-25-503(2); 27-25-703(2) (Rev. 2010).  These taxes are levied "upon every person engaging or continuing within this state in the business of producing, or severing [oil or gas], as defined herein, from the soil or water for sale, transport, storage, profit or for commercial use."  Miss. Code Ann. §§ 27-25-503(1), 27-25-703(1) (Rev. 2010).  Exemptions and reduced assessments are provided in certain instances.  Miss. Code Ann. §§ 27-25-503(1)-(5), 27-25-703(2)-(7) (Rev. 2010).

¶28. Oil and gas severance taxes, more specifically, are "levied upon the producers of such [oil or gas] in the proportion of their ownership at the time of severance . . . ." Miss. Code Ann. §§ 27-25-509(1), 27-25-707(1) (Rev. 2010). The term "producer" is defined broadly as:

> [A]ny person owning, controlling, managing or leasing any [oil or gas] property, or [oil or gas] well, and any person who produces in any manner any [oil or gas] by taking it from the earth or water in this state, and shall include any person owning any royalty or other interest in any [oil or gas] or its value, whether produced by him, or by some other person on his behalf, either by lease contract or otherwise.

Miss. Code Ann. §§ 27-25-501(i), 27-25-701(j) (Rev. 2010). A "person," in turn, is defined as "any natural person, firm, copartnership, joint venture, association, corporation, estate, trust[,] or any other group, or combination acting as a unit, and the plural as well as the singular number." Miss. Code Ann. §§ 27-25-501(h), 27-25-701(i) (Rev. 2010).

¶29. Though oil and gas severance taxes are levied upon "producers" in proportion to their ownership interest, Sections 27-25-509(1) and 27-25-707(1) direct that these taxes "shall be paid by the person in charge of the production operations, who is hereby authorized, empowered and required to deduct from any amount due to producers of such production at the time of severance the proportionate amount of the tax herein levied before making payments to such producer." Miss. Code Ann. §§ 27-25-509(1), 27-25-707(1) (Rev. 2010). And, if "the person in charge of production operations fails to pay the tax, then [the Department of Revenue] shall proceed against the producer to collect the tax in accordance with the provisions made for the collection of delinquent taxes." Miss. Code Ann. §§ 27-25-509(1), 27-25-707(1) (Rev. 2010).

14

¶30.    Article 8, Section 206A of the Mississippi Constitution and Section 27-25-506 of the Mississippi Code provide that "[t]he state's share of all oil and gas severance taxes derived from oil and gas resources under state-owned lands" is to be deposited into an "education improvement trust fund" in the State Treasury. Miss. Const. art. 8, § 206A; Miss. Code Ann. § 27-25-506 (Rev. 2010).

> I.    **Whether the School District is required to pay oil and gas severance taxes on its royalty interests derived from oil and gas production on sixteenth-section land.**

¶31.    The Department of Revenue argues that the chancellor erred in reversing and rendering its denial of Venture's and the School District's request for a refund of oil and gas severance taxes.

¶32.    This Court will reverse the decision of an administrative agency "'only if the decision (1) was unsupported by substantial evidence; (2) was arbitrary and capricious; (3) was beyond the power of the administrative agency to make; or (4) violated the complaining party's statutory or constitutional right.'" *Buffington v. Miss. State Tax Comm'n*, 43 So. 3d 450, 453-54 (Miss. 2010) (footnote omitted) (quoting *Miss. Methodist Hosp. and Rehab. Ctr., Inc. v. Miss. Div. of Medicaid*, 21 So. 3d 600, 606-07 (Miss. 2009)).

¶33.    "'An agency's interpretation of a rule or statute governing the agency's operation is a matter of law that is reviewed de novo, but with great deference to the agency's interpretation.'" *Buffington*, 43 So. 3d at 454 (quoting *Miss. Methodist Hosp. and Rehab. Ctr., Inc.*, 21 So. 3d at 606-07). Recently, this Court clarified what "deference" means in this context. *Queen City Nursing Ctr., Inc. v. Miss. State Dep't of Health*, 80 So. 3d 73, 84 (Miss. 2011). The Court emphasized that it has the ultimate authority and responsibility for

15

interpreting laws. *Id.* So, even though an "agency's interpretation is an important factor that usually warrants strong consideration," the Court does not defer to an agency's intereptation in the sense that it yields judgment or opinion. *Id.* Further, no deference is due if the "'agency's interpretation is contrary to the unambiguous terms or best reading of a statute.'" *Buffington*, 43 So. 3d at 454 (quoting *Miss. Methodist Hosp. and Rehab. Ctr., Inc.*, 21 So. 3d at 606-07).

### A. Whether oil and gas severance taxes are levied upon the Oil Companies or the School District.

¶34. The threshold question that must be addressed is who is responsible for the tax. The Department of Revenue asserts that the Oil Companies — not the School District — are the actual taxpayers. It argues that the Oil Companies are the parties liable for the severance taxes. The chancellor rejected this argument based on this Court's decision in *California Co. v. State of Mississippi*, 221 Miss. 766, 74 So. 2d 856 (1954).

¶35. As discussed above, oil and gas severance taxes are "levied upon the *producers* of . . . [oil or gas] in the proportion of their ownership at the time of severance . . . ." Miss. Code Ann. §§ 27-25-509(1), 27-25-707(1) (Rev. 2010) (emphasis added). And a "producer" is:

> [A]ny person owning, controlling, managing or leasing any [oil or gas] property, or [oil or gas] well, and any person who produces in any manner any [oil or gas] by taking it from the earth or water in this state, and shall include any person owning any royalty or other interest in any [oil or gas] or its value, whether produced by him, or by some other person on his behalf, either by lease contract or otherwise.

Miss. Code Ann. §§ 27-25-501(i), 27-25-701(j) (Rev. 2010). Even though the taxes are levied upon "producers," the "person in charge of the production operations" is required to deduct the producer's share of the taxes from the producer's interest and to remit the taxes

16

on the producer's behalf. Miss. Code Ann. §§ 27-25-509(1), 27-25-707(1) (Rev. 2010). The Court explained this procedure in *California Co.*

¶36.    In *California Co.*, this Court recognized that Mississippi's oil severance tax is levied upon royalty interest owners. *California Co.*, 74 So. 2d at 857. There, the United States government, acting through the Bureau of Land Management, had leased lands to a certain individual; in doing so, it had reserved a one-eighth royalty interest in all oil produced on such lands. *Id.* at 856. That individual, in turn, contracted with The California Company for oil exploration. *Id.* The California Company paid the oil severance tax on the total production for almost three years. *Id.* During that time, the United States refused to allow The California Company to deduct any oil severance taxes from the United States' royalty interest. *Id.* The California Company paid the taxes on the United States' behalf anyway but eventually sought a refund from the Auditor of Public Accounts. *Id.* The California Company argued that states cannot tax the federal government; therefore, it was entitled to a refund for any oil severance taxes that it had paid on the United States's behalf. *Id.* at 857. The Auditor refused The California Company's request, and the chancery court affirmed the Auditor's decision. *Id.* at 856. This Court held that the oil severance tax was levied on the United States as a royalty interest owner. *Id.* at 857. The oil severance tax, it explained, "'is levied upon the *producers* of such oil in the proportion of their ownership at the time of severance . . . ,'" *Id.* at 857 (quoting 1944 Miss. Laws 148) (emphasis added); Miss. Code Ann. § 27-25-509(1) (Rev. 2010); and the term "producer" includes "'any person owning any royalty or other interest in any oil or its value.'" *California Co.*, 74 So. 2d at 857 (quoting 1944 Miss. Laws 146); Miss. Code Ann. § 27-25-501(i) (Rev. 2010)). Thus, even though

17

the "person in charge of the production operations," i.e., The California Company, had paid the tax on the United States' behalf, the tax was not levied directly upon The California Company but was "levied in the first instance on the owners of the oil in proportion to their interest." *California Co.*, 74 So. 2d at 858. The Court ultimately held that, because of the supremacy of the federal government, the oil severance tax was unconstitutional to the extent that it attempted to tax the United States. *Id.* The California Company, therefore, was deemed to be entitled to a credit for the portion of the tax that otherwise would have been charged to the United States as a royalty owner. *Id.*

¶37. Though *California Co.* involved only oil severance taxes, the gas severance statutes are identical on this point. Both taxes are levied upon "producers," which includes royalty owners and actual operators. Miss. Code Ann. §§ 27-25-509(1), 27-25-501(i), 27-25-707(1), 27-25-701(j) (Rev. 2010). The Oil Companies, as the "person[s] in charge of the production operations," deduct the School District's proportionate share of the oil and gas severance taxes from any payment owed to the School District and remit those taxes to the Department of Revenue on the School District's behalf. *See California Co.*, 74 So. 2d at 857-58; Miss. Code Ann. §§ 27-25-509(1), 27-25-707(1) (Rev. 2010). Though the Oil Companies remit the taxes, *California Co.* is clear that the taxes are "levied in the first instance on the owners of the oil in proportion to their interest." *California Co.*, 74 So. 2d at 858.

¶38. The last sentences of Section 27-25-509(1) and Section 27-25-707(1) further support that oil and gas severance taxes are levied upon the School District. Miss. Code Ann. §§ 27-25-509(1), 27-25-707(1) (Rev. 2010). Both statutes state that: "In the event the person in charge of production operations fails to pay the [oil or gas severance] tax, then the

18

[Department of Revenue] shall proceed against the producer to collect the tax in accordance with the provisions made for the collection of delinquent taxes . . . ."  Miss. Code Ann. §§ 27-25-509(1), 27-25-707(1) (Rev. 2010).  In other words, if the Oil Companies fail to remit the taxes, the Department of Revenue is directed to proceed against the producer, i.e. the School District — not the Oil Companies — to collect delinquent taxes.

¶39.    Accordingly, we find that oil and gas severance taxes are levied upon the School District as a royalty owner.

### B.    Whether the School District is excepted from paying oil and gas severance taxes on its sixteenth-section royalty interests.

¶40.    From the outset here, it is important to note that school districts are considered political subdivisions of the state.  *Gressett By & Through Gressett v. Newton Separate Mun. Sch. Dist.*, 697 So. 2d 444, 446 (Miss. 1997) (citing Miss. Code Ann. § 11-46-1(i) (Rev. 2004)).

¶41.    The Department of Revenue argues that neither the oil severance tax statutes in Sections 27-25-501 to 27-25-525, nor the natural gas severance tax statutes in Sections 27-25-701 to 27-25-723, expressly exempt school districts or sixteenth-section lands from taxation.  It argues that taxation is the rule unless an exemption is stated expressly and that no taxpayer has a vested right to an exemption.  It offers several examples in which the state has expressly exempted itself from taxation.  *See* Miss. Code Ann. § 27-31-1(b) (Rev. 2010) (exempting all real or personal property "belonging to the State of Mississippi or any of its political subdivisions" from ad valorem taxes); Miss. Code Ann. § 27-19-27 (Rev. 2010) (exempting state and local government vehicles from motor vehicle privilege taxes); Miss.

19

Code Ann. § 27-65-105 (Rev. 2010) (providing governmental exemptions from sales taxes); Miss. Code Ann. § 27-55-12(1) (Rev. 2010) (exempting "the State of Mississippi, counties, municipalities, school districts and all other political subdivisions of the state" from gasoline, special fuel, and compressed gas excise taxes); Miss. Code Ann. § 27-15-103(1) (Rev. 2010) (providing that foreign insurance carriers that furnish service under the State Employees Life and Health Insurance Plan are not required to pay the annual license or privilege tax on premiums collected)).

¶42.    The Plaintiffs, on the other hand, assert that neither the state nor its political subdivisions are subject to a tax unless the law clearly says they are.

¶43.    In determining whether a person or entity is subject to a tax, different standards apply, depending upon whether the object of the tax is of public or private nature. Generally, "he who claims exemption must show affirmatively an exemption expressly declared, and that the claimant is clearly embraced within the terms of the exemption." *Morris Ice Co. v. Adams*, 75 Miss. 410, 22 So. 944, 945 (1898); *see also Barnes v. Jones*, 139 Miss. 675, 103 So. 773, 776 (1925) (stating that a tax exemption is never presumed and that a claimant has the burden to establish clearly his right to an exemption); *Bridges v. Barr*, 245 Miss. 137, 143, 146 So. 2d 544, 546 (1962) (stating that tax exemptions are strictly construed against the exemptionist and that one who asserts the exemption must establish it clearly). This is consistent with the Department of Revenue's position. But taxation of public property is treated differently. As a general rule, the state does not tax its own property. *State v. Bd. of Miss. Levee Comm'rs*, 75 Miss. 132, 21 So. 661 (1897). Further, this Court has said that where a statute attempts to impose liabilities upon the state or its political subdivisions, the

20

statute is "inapplicable to them, unless they are included expressly or by necessary implication." *Coleman v. Whipple*, 191 Miss. 287, 2 So. 2d 566, 568 (1941) (quoting *City of Jackson v. State*, 156 Miss. 306, 126 So. 2, 4 (1930)).

¶44.    Here, the Plaintiffs are correct: Neither the state nor its political subdivisions are subject to a tax unless the law includes them expressly or by necessary implication. True, the Legislature has chosen in several instances expressly to exempt the state or its political subdivisions from certain taxes. But that does not alter the general, common-law rule concerning taxation of public property.

¶45.    The Court, therefore, must consider whether the School District is included expressly or by necessary implication within the oil-and-gas-severance-tax laws.

       **1.      Whether the School District is included expressly or by necessary implication within the oil-and-gas-severance-tax laws.**

¶46.    The School District and the School Board argue that they are not required to pay oil and gas severance taxes because they are not a "person," as defined in Sections 27-25-501(h) or 27-25-701(i), made subject to such taxes.

¶47.    As discussed above, Sections 27-25-503(1) and 27-25-703(1) levy "annual privilege taxes upon every *person* engaging or continuing within this state in the business of producing, or severing [oil and gas] . . . ." Miss. Code Ann. §§ 27-25-503(1), 27-25-703(1) (Rev. 2010) (emphasis added). These taxes, more specifically, are "levied upon the producers of such [oil and gas] in the proportion of their ownership at the time of severance . . . ." Miss. Code Ann. §§ 27-25-509(1), 27-25-707(1) (Rev. 2010). A "producer," in turn, is:

21

> [A]ny *person* owning, controlling, managing or leasing any [oil or gas] property, or [oil or gas] well, and any *person* who produces in any manner any [oil or gas] by taking it from the earth or water in this state, and shall include any *person* owning any royalty or other interest in any [oil or gas] or its value, whether produced by him, or by some other person on his behalf, either by lease contract or otherwise.

Miss. Code Ann. §§ 27-25-501(i), 27-25-701(j) (Rev. 2010) (emphasis added). Thus, oil and gas severance taxes are levied upon "producers" who, based on the definition of that specific term, must be "persons."

¶48.    Sections 27-25-501(h) and 27-25-701(i) both define a "person" as "any natural person, firm, copartnership, joint venture, association, corporation, estate, trust or any other group, or combination acting as a unit, and the plural as well as the singular number." Miss. Code Ann. §§ 27-25-501(h), 27-25-701(i) (Rev. 2010). Neither the state nor its political subdivisions are included within this definition.

¶49.    This Court has stated that, where "'a statute enumerates and specifies the subject or things upon which it is to operate, it is to be construed as excluding from its effect all those not expressly mentioned or under a general clause, those not of like kind or classification as those enumerated . . . .'" *Lee v. Alexander*, 607 So. 2d 30, 36 (Miss. 1992) (quoting *Southwest Drug Co. v. Howard Bros. Pharmacy of Jackson, Inc.*, 320 So. 2d 776, 779 (Miss. 1975)).

¶50.    Title 1, Chapter 3 of the Mississippi Code sets forth some general rules for construing statutes. Miss. Code Ann. §§ 1-3-1 (Rev. 2005). Notably, Section 1-3-39 states that:

> The term "person," when used in any statute, shall apply to artificial as well as natural persons; and when used to designate the party whose property may be the subject of offense, shall include the United States, this state, or any other state, territory, or country, and any county, city, town or village which

22

may lawfully own property in this state; also all public and private corporations, as well as individuals.

Miss. Code. Ann. § 1-3-39 (Rev. 2005). Section 1-3-1, however, states that "[t]his chapter is applicable to every statute unless its general object, or the context of language construed, or other provisions of law indicate that a different meaning or application was intended from that required by this chapter." Miss. Code Ann. § 1-3-1 (Rev. 2005). Accordingly, the definitions and constructs within that chapter do not apply if another provision of law indicates that a different meaning is intended.

¶51.    This Court cannot apply the general statutory definition of "person" here because the oil-and-gas-severance-tax statutes provide a specific, distinct definition of "person." Sections 27-25-501(h) and 27-25-701(i) show that a different meaning of "person" than that contained in Section 1-3-39 was intended for the purposes of oil and gas severance taxation.

¶52.    The oil and gas severance taxes levied under Sections 27-25-501 to 27-25-525 and 27-25-701 to 27-25-723 are levied upon "persons" only. Such taxes do not apply to the School District because it does not meet the definition of "person" set forth within those provisions. Further we find nothing in these sections that indicates the School District is subject to oil and gas severance taxes by necessary implication.

¶53.    Three Attorney General opinions support our conclusion. In November 1979, the Attorney General was asked to determine whether the state, as a royalty owner, was liable for oil and gas severance taxes on its royalty. *Haddock*, Op. Att'y Gen. #80-0552 (March 21, 1980). The Attorney General found that the state was considered a "producer," but that oil and gas severance taxes could not be levied upon it because there was no "manifest

23

declaration" in Sections 27-25-501 to 27-25-525 or 27-25-701 to 27-25-723 to indicate that it was subject to such taxes. *Id.*

¶54. An Attorney General opinion issued in December 1995 addresses the "person" issue more specifically. *Kuehnle*, Op. Att'y Gen. #95-0772 (December 6, 1995). There, the Attorney General had been asked to determine "whether school districts are exempt from the imposition of a tax on royalties they receive from the production of oil or gas from sixteenth section lands." *Id.* The Attorney General found that school districts are not subject to oil and gas severance taxes on such royalties because "a 'governmental entity' such as a school district does not fall within any of the categories that would expressly classify the school as a person to subject it to" such taxes. *Id.* Months later, the Chief Attorney for the Mississippi Tax Commission requested that the Attorney General reconsider the December 1995 opinion. *Long*, Op. Att'y Gen. #96-0258 (May 10, 1996). The Attorney General once again affirmed the position that school districts' sixteenth-section royalty interests are not subject to severance taxes. *Id.*

¶55. Attorney General opinions are not binding, but they certainly are useful in offering guidance to the Court. *Shelter Mut. Ins. Co. v. Dale*, 914 So. 2d 698, 703 (Miss. 2005) (quoting *In re Assessment of Ad Valorem Taxes on Leasehold Interest Held by Reed Mfg., Inc. ex rel. Itawamba County Bd. of Supervisors*, 854 So. 2d 1066, 1071 (Miss. 2003)).

¶56. The Department of Revenue, however, argues that, because the definition of "person" under Sections 27-25-501(h) and 27-25-701(i) includes "trusts," the severance tax should apply, because the royalty owner here is the sixteenth-section land trust. This argument is strained. Sixteenth-section lands are indeed public-trust lands. *E.g., Bayview Land, Ltd. v.*

24

*State ex rel. Clark*, 950 So. 2d 966, 972 (Miss. 2006) (citations omitted). Yet, the taxpayer here is the School District and not a "trust" per se. And it is difficult to read "public trust" into "trust," given that nothing else in the statute implicates any type of public or governmental entity.

2. **Whether the state or its political subdivisions can be required to pay oil and gas severance taxes on its sixteenth-section royalty interests under the Mississippi Constitution.**

¶57. The Department of Revenue argues that Article 8, Section 206A of the Mississippi Constitution shows that the state is obligated to pay oil and gas severance taxes on state-owned lands. And the Department of Revenue contends that Section 27-25-506 of the Mississippi Code further recognizes that the state pays severance taxes. The School Board and the School District disagree. They insist that Section 206A requires that *all* moneys derived from oil and gas production on sixteenth-section lands be used only for the benefit of the schools within the local township.

¶58. We find, however, that Section 206A does not require the state or its political subdivisions to pay oil and gas severance taxes on its sixteenth-section royalty interests, nor does it exempt them from such taxes.

¶59. Section 206A of the Mississippi Constitution established an "education improvement trust fund" to be used for improving education in Mississippi. Miss. Const. art. 8, § 206A. It states, in pertinent part, that

> There is hereby created and established in the State Treasury a trust fund which may be used, as hereinafter provided, for the improvement of education within the State of Mississippi. There shall be deposited in such trust fund:

25

(a) The state's share of all oil severance taxes and gas severance taxes derived from oil and gas resources under state-owned lands or from severed state-owned minerals;

(b) Any and all monies received by the state from the development, production and utilization of oil and gas resources under state-owned lands or from severed state-owned minerals, except for the following portions of such monies:

. . .

(ii) Monies derived from sixteenth section lands and lands held in lieu thereof or from minerals severed from sixteenth section lands and lands held in lieu thereof; and

. . .

(c) Any gift, donation, bequest, trust, grant, endowment or transfer of money or securities designated for said trust fund; and

(d) All such monies from any other source whatsoever as the Legislature shall, in its discretion, so appropriate or shall, by general law, so direct.

Miss. Const. art. 8, § 206A. Consistent with this constitutional provision, Section 27-25-506 provides that "[t]he state's share of all oil and gas severance taxes derived from oil and gas resources under state-owned lands or from severed state-owned minerals shall be deposited into the State Treasury to the credit of the trust fund created in Section 206A . . . ." Miss. Code Ann. § 27-25-506 (Rev. 2010).

¶60.    Section 206A thus delineates four categories of moneys that are to be deposited into the education improvement trust fund; this case concerns subsections (a) and (b)(ii) specifically.

26

¶61. Subsection (a) directs that "[t]he state's share of all oil severance taxes and gas severance taxes derived from oil and gas resources under state-owned lands or from severed state-owned minerals" shall be deposited into the Section 206A trust fund. Miss. Const. art. 8, § 206A(a). The Department of Revenue argues that this means that state-owned lands, which includes sixteenth-section lands, are taxable and that the state is required to pay severance taxes on oil and gas derived from those lands. The School District and School Board contend that subsection (a) must be read together with subsection (b)(ii).

¶62. Subsection (b)(ii) states that "[a]ny and all monies received by the state from the development, production and utilization of oil and gas resources under state-owned lands or from severed state-owned minerals" are to be deposited into the Section 206A trust fund *except* for "[m]onies derived from sixteenth section lands and lands held in lieu thereof or from minerals severed from sixteenth section lands . . . ." Miss. Const. art. 8, § 206A(b)(ii). The School District and the School Board argue that subsection (b)(ii) means that *all* moneys derived from sixteenth-section lands are excepted from being deposited into the Section 206A trust fund; they insist that all such moneys must go into the local township fund instead. They maintain that their interpretation is consistent with Section 29-3-113, which states that "[a]ll expendable funds derived from sixteenth section or lieu lands shall be credited to the school districts of the township in which such sixteenth section lands may be located" and that "[s]uch funds shall not be expended except for the purpose of education of the educable children of the school district to which they belong, or as otherwise may be provided by law." (citing Miss. Code Ann. 29-3-109 (Rev. 2010)).

27

¶63. The Department of Revenue interprets subsection (b)(ii) differently. It argues that subsection (b)(ii) excepts the income or revenue derived from oil and gas production on sixteenth-section lands from being deposited into Section 206A trust fund but does not exempt severance taxes from being deposited into that fund.

¶64. We disagree with the Department of Revenue to the extent that it interprets subsection (a) as proving that the state pays severance taxes on state-owned lands. Subsection (a) says only that all severance taxes received from oil and gas resources on state-owned lands must go into the Section 206A trust fund. Miss. Const. art. 8, § 206A(b). It says nothing, however, about who is or is not required to pay those taxes. Section 206A's only concern is that the state's share of the severance taxes be deposited into the trust fund; it is not concerned with who the taxpayer might be. Accordingly, subsection (a) neither subjects the state to nor excludes the state from paying oil and gas severance-taxes: It is silent on that issue.

¶65. We also disagree with the School District's and School Board's position that Section 206A excepts all moneys derived from oil and gas production on state-owned lands from being deposited into the Section 206A trust fund. Subsection (a) addresses oil and gas severance taxes, while Subsection (b) refers specifically to "[a]ny and all monies received by the state" from oil and gas production on state-owned lands. Miss. Const. art. 8, § 206A(a),(b). The fact that Section 206A treats severance taxes separately from "[a]ny and all monies received" indicates that these two categories are distinct. Thus, contrary to the School District's and the School Board's assertions, "[a]ny and all monies received" cannot be interpreted as encompassing severance-tax moneys. If "[a]ny and all monies received"

28

under subsection (b) encompassed severance taxes, then subsection (a) would be rendered meaningless. The most reasonable interpretation then is that subsection (b) refers only to net income, i.e., "monies received," and not severance taxes. Thus, under subsection (b)(ii), only the net income derived from sixteenth-section lands is excepted from being deposited into the Section 206A trust fund.

¶66. The Court finds that, read together, the most reasonable interpretation of Section 206A(a) and (b)(ii) is as follows: The state's share of all oil and gas severance taxes derived from state-owned lands — regardless of who the taxpayer may be — is to be deposited into the Section 206A trust fund; additionally, any and all net income received by the state from oil and gas production on state-owned lands is to go into the Section 206A trust fund as well, *except* for any and all net income derived from sixteenth-section lands.

¶67. The above construction of Section 206A is not contrary to Section 211 of the Mississippi Constitution or to Sections 29-3-109 or 29-3-113 of the Mississippi Code. Section 211 of the Mississippi Constitution affirms that sixteenth-section lands are reserved for the support or benefit of township schools. Miss. Const. art. 8, § 211. That section, however, does not necessarily prohibit taxes or fees from being assessed on such lands. Section 29-3-109 states that "[a]ll expendable funds derived from sixteenth section or lieu lands shall be credited to the school districts of the township in which such sixteenth section lands may be located . . . . [and] [s]uch funds shall not be expended except for the purpose of education of the educable children of the school district to which they belong, or as otherwise may be provided by law." Miss. Code Ann. § 29-3-109 (Rev. 2010). And Section 29-3-113(d) directs that "royalties received from the sale of . . . oil and gas" are to be

29

deposited into the school board's principal fund. Miss. Code Ann. § 29-3-113(d) (Rev. 2010). These two code sections, however, cannot mean that every cent derived from sixteenth-section lands must be used only for the education of the children within the township. Other statutes show that this position is untenable. Section 29-3-73, for example, provides that sixteenth-section lands that lie within, and are benefitted by, a drainage district are liable for their "pro rata share of the costs, expenses, taxes, and assessments relating to said district." Miss. Code Ann. § 29-3-73 (Rev. 2010). If the land is held by a lessee, the lease contract is to fix whether the lessee or the school board is liable for these taxes and assessments. *Id.* And if the land is not leased, the school board is obligated to pay all drainage taxes and assessments and can do so "out of any sixteenth section funds belonging to the township in which such lands are located." *Id.* Drainage taxes and assessments are thus payable out of funds that otherwise would be used for the local schools. Additionally, Section 29-3-99 states that school districts' royalty interests from oil and gas production on sixteenth-section lands are computed after deducting any use by the lessee. Miss. Code Ann. § 29-3-99 (Rev. 2010). Such deduction reduces the amount of money that otherwise would be paid as part of the school district's royalty interest. Sections 29-3-73 and 29-3-99 thus indicate that local schools are not always entitled to every cent derived from sixteenth-section lands.

¶68.    Here, though, we conclude that Section 206A neither requires the state or its political subdivisions to pay oil and gas severance taxes on its sixteenth-section royalty interests nor exempts them from such taxes.

**II. Whether the statute of limitations restricts the period of time in which the School District can seek a refund of severance taxes that it has paid erroneously.**

¶69. After finding that the School District was not required to pay severance taxes, the chancellor found that the three-year statute of limitations in Section 27-73-5 barred the School District and the Oil Companies from claiming a refund for any taxes paid before July 2, 2005 – three years prior to the date that Venture and the School District had filed their initial complaint. The chancellor found that the cases in which this Court had held that the statute of limitations and laches do not run against the state or its subdivisions had involved litigation between the state, or one of its subdivisions, and a private party. He could not find any case that had addressed whether the statute of limitations applied in a dispute between a political subdivision of the state and a state agency. The chancellor thus reasoned that, since the state had created the School District, it had the power to set statutes of limitations for any claims that the School District made against its creator. The state, he said, has "'authority to control its political subdivisions.'"(citing **State v. Hinds County Board of Supervisors**, 635 So. 2d 839, 843 (Miss. 1994)).

**A. Whether the statute of limitations applies.**

¶70. The Plaintiffs assert that Article 4, Section 104 of the Mississippi Constitution and Section 15-1-51 of the Mississippi Code are clear that the statutes of limitation do not run against the state or any of its subdivisions. They argue that the Constitution governs this issue. **Newell v. State**, 308 So. 2d 71, 77 (Miss. 1975); **Chevron U.S.A., Inc. v. State**, 578 So. 2d 644, 648 (Miss. 1991); **Town of Crenshaw v. Panola County**, 115 Miss. 891, 76 So. 741 (1917). Further, they contend that the chancellor erred in relying upon **Hinds County**

31

*Board of Supervisors* in reaching his decision, as the statutes of limitations were not at issue in that case.

¶71. The Department of Revenue, on the other hand, asserts that the Oil Companies — not the School District — are the taxpayers; therefore, the statute of limitations is not being applied to the State or its subdivisions. It argues further that the state and its subdivisions, on occasion, have been deemed subject to statutes of limitation. It cites three cases as support: *Town of Tutwiler v. Gibson*, 117 Miss. 879, 78 So. 926 (1918); *Tallahatchie County v. Little*, 93 Miss. 88, 46 So. 257 (1908); and *Gully v. Bew*, 170 Miss. 427, 154 So. 284 (1934). The Department of Revenue also warns that failure to apply a statute of limitations could result in "a severe blow to the state's coffers." Additionally, it asserts that records dating back beyond three years have been destroyed under the "State Document Retention Policy."

¶72. We already have addressed the Department of Revenue's contention that the Oil Companies — not the School District — are the taxpayers and found that argument to be without merit. *See, supra* Issue I.A. *California Co.* is clear that the severance taxes are levied upon the School District in the first instance. *California Co.*, 74 So. 2d at 858. Even though the Oil Companies may remit these taxes, the taxes are deducted from the School District's ownership share; any refund, therefore, would belong to the School District.

¶73. Article 4, Section 104 of the Mississippi Constitution states that: "[s]tatutes of limitation in civil causes shall not run against the state, or any subdivision or municipal corporation thereof." Miss. Const. art. IV, § 104. Section 15-1-51 repeats this same language. Miss. Code Ann. § 15-1-51 (Rev. 2012).

32

¶74.	This Court has said that the purpose of Sections 104 and 15-1-51 "is that the body politic should not suffer because of the neglect or procrastination of its public servants in promptly asserting and protecting rights of the general public in civil matters." *Miss. State Highway Comm'n v. New Albany Gas Sys.*, 534 So. 2d 204, 207 (Miss. 1988). Since Section 104 was enacted, this Court consistently has upheld the "immunity" a governmental entity enjoys from these provisions. *Enroth v. Mem'l Hosp. at Gulfport*, 566 So. 2d 202, 206 (Miss. 1990); *see also Murphree v. Aberdeen-Monroe County Hosp.*, 671 So. 2d 1300 (Miss. 1996); *State Highway Comm'n v. New Albany Gas Sys.*, 534 So. 2d 204, 207 (Miss. 1988); *Board of Educ. of Itawamba County v. Loague*, 405 So. 2d 122, 124-25 (Miss. 1981); *Nugent & Pullen v. Robertson*, 126 Miss. 419, 88 So. 895, 897-98 (1921); *Grenada Lumber Co. v. State*, 98 Miss. 536, 54 So. 8, 9 (1911); *Adams v. Illinois Cent. R. Co.*, 71 Miss. 752, 15 So. 640 (1894).

¶75.	None of the cases cited by the Department of Revenue is persuasive to the contrary. In *Gibson*, the Court held that a municipality was subject to the time limitations for filing an appeal. *Gibson*, 78 So. at 926-27. The Court said that "the time within which appeals to the Supreme Court must be taken is not a statute of limitation in the ordinary sense." *Id.* at 926. Therefore, it found that Article 4, Section 104 of the Constitution had no bearing upon that case. *Id.* In *Little*, the Court held only that the two-year period allowed for redemption from a tax sale did not constitute a "statute of limitations" under Article 4, Section 104. *Little*, 46 So. at 258. Finally, in *Gully*, the Court held that the state tax collector was subject to a six-year statutory limitations period for filing suit to foreclose two mortgages securing illegal loans made by a county. *Gully*, 154 So. at 288. The Court said that the county's cause of

33

action had accrued as soon as the loans had been made, and it noted that, under Article 4, Section 104 of the Mississippi Constitution, the statute of limitations did not run against the county. *Id.* But, it found that the six-year statute of limitations applied in that case, because that particular statute of limitations was "not a limitation on the cause of action but a limitation on the right of the [state tax collector] to sue on an existing cause of action in favor of the county." *Id.*

¶76.    All of the above-mentioned cases, however, involved suits between governmental and private entities. Here we have a suit between governmental entities. The only case that appears to address the question before us is *Town of Crenshaw v. Panola County*, 115 Miss. 891, 76 So. 741 (1917).

¶77.    There, the Town of Crenshaw had presented a claim to the Panola County Board of Supervisors in 1915 for its share of the ad valorem taxes Panola County had collected for the years 1907 and 1908. *Id.* After the board of supervisors rejected the claim, the Town sued in justice court, which rendered judgment in favor of the Town. *Id.* Panola County appealed to the circuit court, asserting that the Town's suit was barred by a six-year statute of limitations. *Id.* 741-42. The circuit court agreed with Panola County. *Id.* at 742. Like the chancery court here, the court took the position that Section 104 prohibited the Legislature only from authorizing a statute of limitations against the state, its subdivisions, and municipal corporations when private parties are involved. *Id.* This Court rejected the circuit court's interpretation of Section 104 and held that the statute of limitations did not apply against the town:

34

Section 104 of our Constitution expressly provides that the statutes of limitation shall not run against municipal corporations. The plaintiff in this case is a municipal corporation, and we can find nothing in the Constitution to warrant the exception sought to be made in this case. The county could, of course, invoke the statute against a natural person or private corporation, but the Constitution closes the door when the plaintiff is a municipal corporation.

*Town of Crenshaw*, 76 So. at 743. *Town of Crenshaw* thus supports that Section 104 applies even when the state, or any of its subdivisions, is either plaintiff or defendant.

¶78. That said, because the chancellor based his decision on the statute of limitations, he did not reach the question of whether the doctrines of waiver and/or estoppel should apply in this case.[7] We believe they warrant consideration in this instance. Accordingly, we remand this issue to the chancery court to allow these doctrines to be considered fully.

### III. Whether the School District is liable for administrative expense taxes on its royalty interests derived from oil and gas production on sixteenth-section land.

¶79. A trial court's grant of summary judgment is reviewed de novo. *Hooker v. Greer*, 81 So. 3d 1103, 1108 (Miss. 2012) (citing *Waggoner v. Williamson*, 8 So. 3d 147, 152 (Miss. 2009)). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories and admissions on file . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). The evidence is considered in the light most favorable to the nonmoving party. *Hooker*, So. 3d at 1108 (citing *Waggoner*, 8 So. 3d at 152). The movant has the

---

[7] We acknowledge that the doctrine of laches was raised below, but the well-settled law in Mississippi is that neither the state nor its entities is subject to the statutes of limitations or chargeable with the laches of its officials. *Board of Education of Lamar County v. Hudson*, 585 So. 2d 683, 688 (Miss.1991); *Hill v. Thompson*, 564 So. 2d 1, 14 (Miss. 1989).

burden of showing that no genuine issue of material fact exists, and the nonmoving party is given the benefit of the doubt as to the existence of a material fact. *Hooker*, 81 So. 3d at 1108 (citing *Waggoner*, 8 So. 3d at 152-53).

¶80. The chancellor found that the School District was required to pay administrative expense taxes on its sixteenth-section royalty interests. The chancellor relied on *Bidart Brothers v. California Apple Commission*, 73 F.3d 925, 927 (9th Cir. 1996), to determine that these assessments are fees, not taxes. The chancellor said that these fees fund the regulatory and enforcement functions of the Oil and Gas Board and that the Plaintiffs benefitted directly from the Oil and Gas Board's services. He noted that the Oil and Gas Board ensures that the School District is paid its fair royalty share.

¶81. Once again, we note that the Secretary of State does not appeal the chancellor's grant of summary judgment for the Oil and Gas Board. The School District and School Board, however, assert that the chancellor's tax-fee distinction is inconsequential: All monies, whether taxes or fees, must go to the School District. Alternatively, the School District and School Board challenge that these fees are not reasonably related to sixteenth-section lands. The operations of the Oil and Gas Board, they argue, are expansive and serve the broad interests of the public, not just sixteenth-section lands.

¶82. Section 53-1-73 of the Mississippi Code levies an administrative expense tax on each barrel of oil produced in the state. Miss. Code Ann. § 53-1-73 (Rev. 2003). The moneys collected are to be "used exclusively to pay the expenses and other costs in connection with the functioning of the State Oil and Gas Board and the administration of the oil and gas conservation laws of the State of Mississippi now in force or hereafter enacted and the rules,

36

regulations and orders of said board." Miss. Code. Ann. § 53-1-73 (Rev. 2003). The Oil and Gas Board has the power to increase or reduce the amount charged within the limits set forth in Section 53-1-73. *Id*.

¶83. All "persons" owning a royalty interest are liable for administrative expense taxes in proportion to their ownership at the time of production. Miss. Code Ann. § 53-1-75 (Rev. 2003). Unlike the definition of "person" under the oil-and-gas-severance-tax statutes, the definition of "person" for the purposes of administrative expense taxes does include the state and its political subdivisions. Miss. Code Ann. § 53-1-71 (Rev. 2003). Section 53-1-71 states, in pertinent part, that the term "person," as used in Section 53-1-73, "shall mean any individual, corporation, partnership, association, or any state, municipality, political subdivision of any state . . . ." Miss. Code. Ann. § 53-1-71 (Rev. 2003). The Legislature first included individuals, partnerships, associations, states, municipalities, political subdivisions of a state, and any agency, in the statute in 2009 Miss. Code.

¶84. The School District is required to pay administrative expense taxes to the Oil and Gas Board. The assessments levied under Section 53-1-73 are labeled more appropriately as fees rather than taxes.

¶85. In ***San Juan Cellular Telephone Co. v. Public Service Commission of Puerto Rico***, 967 F.2d 683 (1st Cir. 1992), then-Chief Judge Breyer discussed the general approach that courts have used to distinguish taxes from fees:

> Courts have had to distinguish "taxes" from regulatory "fees" in a variety of statutory contexts. Yet, in doing so, they have analyzed the legal issues in similar ways. They have sketched a spectrum with a paradigmatic tax at one end and a paradigmatic fee at the other. The classic "tax" is imposed by a legislature upon many, or all, citizens. It raises money, contributed to a general

37

fund, and spent for the benefit of the entire community. The classic "regulatory fee" is imposed by an agency upon those subject to its regulation. It may serve regulatory purposes directly by, for example, deliberately discouraging particular conduct by making it more expensive. Or, it may serve such purposes indirectly by, for example, raising money placed in a special fund to help defray the agency's regulation-related expenses.

Courts facing cases that lie near the middle of this spectrum have tended (sometimes with minor differences reflecting the different statutes at issue) to emphasize the revenue's ultimate use, asking whether it provides a general benefit to the public, of a sort often financed by a general tax, or whether it provides more narrow benefits to regulated companies or defrays the agency's costs of regulation.

*San Juan Cellular Tel. Co.*, 967 F.2d at 685 (1st Cir. 1992) (citations omitted). The United States Court of Appeals for the First Circuit held that the "period rate" or "periodic fee" in that particular case was a fee, and not a tax, because: (1) a regulatory agency assessed the fee; (2) the agency placed the money in a special fund; and (3) the money was used to defray the expenses of agency rather than for a general purpose. *Id.* at 686.

¶86.    The administrative expense tax levied under Section 53-1-73 is more a fee than a tax. The Oil and Gas Board fixes the actual charge and collects the assessments. Miss. Code Ann. § 53-1-73 (Rev. 2003). The money is then deposited into a special fund known as the "Oil and Gas Conservation Fund." Miss. Code Ann. § 53-1-77(1) (Rev. 2003). That money is "held in trust for the use of the board to pay the expenses and costs incurred in connection with the administration and enforcement of the oil and gas conservation laws of the State of Mississippi and the rules, regulations and orders" of the Oil and Gas Board. Miss. Code Ann. § 53-1-77(2) (Rev. 2003). The Oil and Gas Board is self-funded and relies heavily on these assessments. These assessments accounted for $2.88 million of the Oil and Gas Board's $3.62 million budget for fiscal year 2009, and $1.96 million of its $2.24 million budget for

fiscal year 2010. Excess money within the Oil and Gas Conservation Fund is used to plug oil or gas "orphan" wells that present imminent threats to the environment. Miss. Code Ann. § 53-1-77(4)-(7) (Rev. 2003).

¶87. The assessments under Section 53-1-73 satisfy all the criteria of a fee: The Oil and Gas Board assesses the fee, the money goes into a special fund, and the money is used to defray the Oil and Gas Board's costs of operation.

¶88. If the assessments under Section 53-1-73 are fees, no constitutional provision or law would preclude the School District from having to pay these fees. Section 206A of the Mississippi Constitution, discussed *supra,* Issue I.B.1., does not require that every cent derived from sixteenth-section property be used for the local schools. Other statutes support this as well. *See supra,* Issue I.B.1.

¶89. In the absence of any constitutional or other lawful barrier, the School District can be required to pay the administrative expense tax because it is expressly included within the statute. The School District fits within the definition of "person" owing administrative expense taxes. Unlike the oil-and-gas-severance-tax statutes, the Legislature has expressly made the state and its political subdivisions subject to this assessment.

¶90. For these reasons, the chancellor did not err in granting summary judgment for the Oil and Gas Board.

## CONCLUSION

¶91. We find that the School District is not required to pay oil and gas severance taxes on its sixteenth-section royalty interests. But the School District is required to pay administrative expense taxes on its sixteenth-section royalty interests. On remand, the

chancery court shall determine whether the doctrines of waiver and/or estoppel should apply to the Plaintiffs' refund claims. Accordingly, the judgment of the Jones County Chancery Court is affirmed in part and reversed in part and remanded for further proceedings consistent with this opinion.

¶92.    **AFFIRMED IN PART; REVERSED IN PART AND REMANDED.**

**DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, KING AND COLEMAN, JJ., CONCUR. WALLER, C.J., NOT PARTICIPATING.**